95 So.2d 334

**STATE of Louisiana**

**v.**

**Jolande ALMERICO.**

No. 43366.

April 1, 1957.

Rehearing Denied May 6, 1957.

Leonard A. Calcagno, New Orleans, for appellant.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Leon D. Hubert, Jr., Dist. Atty., Phil Trice, Asst. Dist. Atty., New Orleans, for appellee.

PONDER, Justice.

The defendant was charged in a bill of information in that she did "willfully, and unlawfully violate [LSA–]R.S. 26:88(7) in that said Jolande Almerico being the holder of a retail dealer's permit for engaging and while engaging in the business of dealing in alcoholic beverages at the Manhattan Club, located at 1310 Canal Street, did willfully and unlawfully employ and permit females to solicit patrons and said females did solicit patrons for drinks and to accept drinks from patrons on or about the licensed premises and to receive therefor a commission or remuneration." The defendant was tried, convicted and sentenced to pay a fine of $305 and serve three months in the Parish Prison and in default of the payment of the fine to serve an additional sixty days. The defendant has appealed.

During the course of the trial, the defendant reserved seven bills of exceptions, some of which were taken to the overruling of a motion to quash the information, the overruling of a motion for a new trial, and the overruling of a motion in arrest of judgment. Counsel for defendant is only urging, on this appeal, three grounds for a reversal of the conviction and sentence.

The defendant's first contention is that the bill of information does not disclose the particular acts and things relied on as constituting the offense charged. She takes the position that since the offense may be committed in more than one way that the acts and things relied on as constituting the offense must be charged specifically. In support of this contention she cites State v. Mines, 137 La. 489, 68 So. 837; State v. Verdin, 192 La. 275, 187 So. 666; and State v. Hebert, 205 La. 110, 17 So.2d 3.

LSA–R.S. 26:88 provides that "no person holding a retail dealer's permit and no agent, associate, employee, representative, or servant of any such person shall do or permit any of the following acts to be done on or about the licensed premises: * * * (7) Employ or permit females, commonly known as 'B Girls', to solicit

patrons for drinks and to accept drinks from patrons and receive therefor any commission or any remuneration in any other way."

From a reading of Section (7) of LSA-R.S. 26:88 the offense set out therein is stated in the conjunctive and not in the disjunctive. However if it were stated in the disjunctive the bill of information charges the offense in the conjunctive in one count and under the provisions of LSA-R.S. 15:222 and the holding in the case of State v. O'Brien, 226 La. 807, 77 So.2d 402, the information would not be vulnerable to the objection.

LSA-R.S. 15:227 provides "the indictment must state every fact and circumstance necessary to constitute the offense, but it need do no more, and it is immaterial whether the language of the statute creating the offense, or words unequivocally conveying the meaning of the statute, be used." The bill of information in this case meets these requirements.

In the case of State v. Mines, supra, it was stated that where a charge contained in an indictment even though in the language of the statute is so general as not to disclose particular acts and things relied on as constituting the offense, the defendant may require further information by means of a bill of particulars or by demurrer or motion to quash. The statute in that case is specific and sets forth the acts that constitute the crime.

In the case of State v. Verdin, supra, the defendant was prosecuted for disturbing the peace and the conviction was reversed on the ground that the indictment merely charged the defendant with disturbing the peace without specifying one of the several ways by which the peace could be disturbed as set forth in the statute itself, therefore, this case is not in point.

In the case of State v. Hebert, supra, the defendant being over the age of 17 years was charged with committing indecent behavior with a named individual, a juvenile under the age of 17 years. The court held in that case that the indictment was defective because it did not convey to the defendant the nature of the acts or the way or manner in which the defendant violated the law.

In the case before us the statute sets forth the acts constituting the crime and it is set out in the bill of information these acts constituting the crime.

■ The second contention urged by the defendant is that the bill of information is insufficient to inform the court as to the offense charged, to inform the accused of the nature of the accusation and to support a plea of former jeopardy. It is argued that the bill of information fails to state the names of the persons who allegedly solicited drinks, whether defendant employed such persons or permitted them to solicit and accept drinks, the time of day

such acts occurred and in which they allegedly received a commission or remuneration.

What the defendant is seeking to do here is to force the State to divulge evidence that it relies upon to prove the offense.

It is further contended that the information fails to charge that the females were members of the class or classification set out in the statute, viz.: "females, commonly known as 'B Girls'." It was not necessary to include this language in the bill of information because the statute sets out what constitutes the offense and merely refers to such females as being "B Girls".

While the defendant sets out the three tests to support a plea of former jeopardy, as stated in the cases of State v. Ward, 208 La. 56, 22 So.2d 740; State v. Pizzollotto, 209 La. 644, 25 So.2d 292; and State v. Pullen, 210 La. 918, 28 So.2d 609, and also LSA-R.S. 15:227, she does not advance any reasons or any arguments in her brief why the bill of information is not sufficient on its face to support the plea of former jeopardy.

■■ The defendant's third contention is to the effect that the State failed to prove an essential element of the offense, viz., that the females who solicited the drinks received a commission or remuneration.

It would be very difficult to prove that the females received a commission or remuneration by direct evidence and in most instances the State must rely on circumstantial evidence to prove this fact. We do not inquire into the sufficiency of the evidence and it is only where there is a total lack of evidence of an essential element of the offense that we are justified in setting aside the conviction. There were circumstances proved in this case that leads to the conclusion that the females did receive a commission.

It is charged in the bill of information that the offense was committed on August 4, 1955. It appears that the New Orleans Police Department, believing that these unlawful activities were being carried on in defendant's night club, sought to discover proof of these violations by sending a member of the Department dressed in plain clothes into this establishment about 2:30 a. m. on August 3, 1955. Upon entering the club the officer was met by Mae Thomas, a waitress, who asked him if he wanted to sit at a table or a booth. He sat at a table at her direction and ordered a bottle of beer. Shortly thereafter, he was joined at the table by a female by the name of Dolores Span, who solicited this officer to buy her a drink. The officer, at the request of Dolores Span, purchased for her a champagne cocktail for which he paid $2.60. Dolores Span then asked if Honey Lee, another female, could join them and Honey Lee solicited the officer to buy her a drink, which he did and for which he paid $2.60 to the waitress who

was serving them. Then the two females suggested it would be cheaper for him to buy a bottle of champagne for $14.55. Thereupon the officer started to identify himself and Dolores Span quickly left the table and ran to the back of the club. The officer followed her unsuccessfully and when he returned Honey Lee had made her departure.

About the same time, on August 4, 1955, another officer in plain clothes went into the establishment, at which time the accused, the owner of the place, was standing in the front part of the room. The officer was accosted by Swannie Connors, who conducted him to a booth, whereupon the officer ordered a bottle of beer. The waitress returned in a few minutes with Ruth Johnson, who solicited the officer to buy her a drink. The drink was ordered and the officer paid the waitress $1.30. In the meantime, another policeman in plain clothes entered and seated himself in an adjacent booth. At this point, the first officer identified himself as a police officer and the second officer summoned other police officers who were waiting nearby with agents of the department of revenue. The officers obtained three order pads from Mae Thomas, which designated the females by number. Order pads were hidden in a flower plant box when found by the officers.

Upon examination of these order pads, it appears that the number of the females

is listed and opposite the number is the figure undoubtedly received for drinks they solicited. It is the theory of the State, and it so contends, that these records were kept in order to determine the commission or remuneration.

With these circumstances in view, we cannot say that there was a total lack of evidence that these females were receiving a commission or remuneration.

For the reasons assigned, the conviction and sentence are affirmed.