141 So.2d 350

**STATE of Louisiana**

**v.**

**John E. COON.**

No. 45771.

March 26, 1962.

Dissenting Opinion March 30, 1962.

Rehearing Denied June 4, 1962.

D'Amico & Curet, Baton Rouge, for defendant-relator.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Sargent Pitcher, Jr., Dist. Atty., for plaintiff-respondent.

HAMLIN, Justice.

The defendant, John E. Coon, was indicted by the Grand Jury for the Parish of East Baton Rouge for a violation of LSA–R.S. 14:138, Public Pay Roll Fraud, "in that he, a public official, in his capacity as State Fire Marshal in charge of the State Fire Marshal's Office, carried or permitted to be carried directly upon the employment list or payroll of said Office the name of Gibson O. Kimberlin as an employee of his office, specifically as a Deputy Fire Marshal I, and paid said employee for services rendered as a Deputy Fire Marshal I, with knowledge that such employee was receiving payment or compensation for services not actually rendered by said employee or for services grossly inadequate for such payment or compensation, * * *"

In the exercise of our supervisory jurisdiction (Art. VII, Sec. 10, La.Const.1921, LSA) we issued a Writ of Certiorari, "limited to a consideration of the question of venue or jurisdiction," to review a judgment of the trial court which overruled a motion to quash for lack of jurisdiction filed by the defendant. The motion recites in part:

"That if the name of Gibson O. Kimberlin was 'carried' or 'permitted to be carried' on any payroll or employment list of the State Fire Marshal's office, same was done in the Parish of Orleans.

"The said Gibson O. Kimberlin was paid by the State Fire Marshal by means of checks made in New Orleans, drawn on a bank in New Orleans, in which were deposited the funds of the State Fire Marshal, payable to Gibson O. Kimberlin, which checks were sent from New Orleans to Gibson O. Kimberlin at Baton Rouge, Louisiana, where Gibson O. Kimberlin deposited said checks in a Baton Rouge bank or banks and were honored and paid by the New Orleans bank on which they were drawn, except one check which was made in New Orleans, drawn on a bank in Ouachita Parish in which were deposited the funds of the State Fire Marshal, payable to the order of Gibson O. Kimberlin and was sent from New Orleans to Gibson O. Kimberlin at Baton Rouge and was subsequently honored and paid in Ouachita Parish.

"That if the accused had knowledge that Gibson O. Kimberlin was receiving payment or compensation, said knowledge was acquired in the Parish of Orleans.

"Should the State contend that a substantial element of the crime was committed in the Parish of East Baton Rouge (which is denied by the accused)

and that jurisdiction is vested in this Parish by virtue of R.S. 15:13, defendant alleges that R.S. 15:13 is unconstitutional, null and void, wherein same provides that an accused may be tried in any Parish where a substantial element of the crime has been committed, because it violates Art. 1, Sections 2 and 9 of the Constitution of Louisiana, in permitting an accused to be tried in a Parish other than where the crime was committed and violates the 'due process' clause of the 14th Amendment of the U. S. Constitution in that the accused may be deprived of his liberty without due process of law."

The motion to quash for lack of jurisdiction was tried on a stipulation of facts entered into between the District Attorney and counsel for the defendant, the pertinent parts of which set forth:

1. That the accused was the State Fire Marshal.

2. The accused was domiciled in the Parish of Ouachita.

3. The main office of the State Fire Marshal is located in Orleans Parish.

4. The employment records of his office are kept in Orleans Parish.

5. That for the purposes of the performance of his duties as State Fire Marshal the accused resided in Orleans Parish.

6. The names of the employees. of the Fire Marshal were carried on the payroll and employment roster of said office in Orleans Parish.

7. That the name of Gibson O. Kimberlin was carried on the employment roster or payroll list of the Fire Marshal's office in Orleans Parish.

8. A copy of the classified (civil service) employees of the Marshal's office was kept in East Baton Rouge Parish on which appeared the name of Gibson O. Kimberlin as a Deputy Fire Marshal I.

9. That Gibson O. Kimberlin was paid by the issuance of checks by the Fire Marshal payable to the order of Gibson O. Kimberlin.

10. All of said checks were drawn on the Bank of New Orleans & Trust Co. located in Orleans Parish, except one check dated January 23, 1961, which was drawn on the Ouachita National Bank in Ouachita Parish.

11. All checks were signed by the accused as State Fire Marshal.

12. All checks were sent from the Fire Marshal's office in Orleans Parish to Gibson O. Kimberlin at Baton Rouge where he received them.

13. That the funds from which all of the above mentioned checks were paid by the Bank of New Orleans and

. Trust Company at its business house in New Orleans, Louisiana, Orleans Parish, Louisiana, were derived in the following manner: The Fire Marshal, John E. Coon, on July 5, 1960, on August 24, 1960 and on December 29, 1960, drew three warrants addressed to the Auditor of the State of Louisiana, requesting him to direct the State Treasurer to pay to the order of the Fire Marshal, State of Louisiana, various sums of money; that these warrants were drawn for the State Fire Marshal in New Orleans, deposited to the State Fire Marshal's Account and were honored out of funds on deposit in the City National Bank in the Parish of East Baton Rouge, State of Louisiana, to the account of the State Treasurer.

14. All checks were endorsed by Gibson O. Kimberlin and deposited by him in the American Bank and Trust Company at Baton Rouge, Louisiana, except two which were endorsed by him and cashed by his wife in the City of Baton Rouge.

15. All checks drawn on the Bank of New Orleans & Trust Co. were honored at its banking house in Orleans Parish and the check drawn on the Ouachita National Bank was honored by it in Ouachita Parish.

The State contends that the trial judge was correct in his ruling that the Nineteenth Judicial District Court for the Parish of East Baton Rouge had jurisdiction of the trial of the alleged offense and asserts that venue for this prosecution for the violation of LSA–R.S. 14:138 [1] lies in the Parish of East Baton Rouge, where Gibson O. Kimberlin was paid by defendant, who sent the checks to him while he was in said Parish, with knowledge that said Kimberlin was receiving payment or compensation for services not actually rendered by said Kimberlin, or for services grossly inadequate for such payment or compensation, after defendant had, as State Fire Marshal, knowingly carried or permitted said Kimberlin to be carried directly upon the employment list or pay roll of the State Fire Marshal's Office as an employee of said office, for services not actually rendered or for services grossly inadequate for such payment or compensation.

1. The pertinent part of LSA–R.S. 14:138 for which the accused has been indicted reads as follows: "Public pay roll fraud is committed when: * * * (2) Any public officer or public employee shall carry, cause to be carried, or permit to be carried, directly or indirectly, upon the employment list or pay roll of his office, . the name of any person as employee, or shall pay any employee, with knowledge that such employee is receiving payment or compensation for services not actually rendered by said employee or for services grossly inadequate for such payment or compensation."

The defendant contends:

1. The venue for the prosecution of the State Fire Marshal for the violation of LSA–R.S. 14:138 (Public Pay Roll Fraud) cannot be had in the Parish of East Baton Rouge where he has committed no overt acts toward the accomplishment of the alleged crime.

2. The carrying or permitting one to be carried upon the employment list or pay roll of the State Fire Marshal's Office and the payment of anyone for services not actually rendered or for services grossly inadequate for such payment or compensation, if committed by the State Fire Marshal would be so done by him in the Parish of Orleans and therefore the Parish of East Baton Rouge would not have venue of the alleged offense, particularly where the checks issued for the payment of said services were issued by the State Fire Marshal outside of the Parish of East Baton Rouge to the alleged purported employee drawn on a bank outside of the Parish of East Baton Rouge and which checks were honored by said bank outside the Parish of East Baton Rouge.

The contentions advanced by the State and the defendant place the question of the constitutionality vel non of LSA–R.S. 15:13 at the threshold of the case, and we direct our immediate attention to a consideration of it.

LSA–R.S. 15:13 provides:

"All trials shall take place in the parish in which the offense shall have been committed, unless the venue be changed; provided that where the several acts constituting a crime shall have been committed in more than one parish, the offender may be tried in any parish where a *substantial element of the crime* has been committed." (Emphasis ours.)

The above statute came into existence in its entirety by the passage of Act 147 of 1942,[2] which in part amended and re-enacted Article 13 of the Louisiana Code of Criminal Procedure of 1928. At the time the statute was passed, Article I, Section 9, of the Louisiana Constitution of 1921 provided, "that all trials shall take place in the parish in which the offense was committed, unless the venue be changed."

Act 63 of 1940 (the "Deadhead" statute), in great part similar to LSA–R.S. 14:138, provided in Section 4:

"That the District Court of the parish wherein any draft or check for the payment of any pretended services, prohibited under this Act, is drawn, or the District Court of the parish wherein the employment list or payroll rec-

2. Act 147 of 1942 added the part of the article following the semicolon.

ords of the employment are ordinarily kept, or the District Court of the parish wherein any draft, check or payment for pretended services was received or cashed or deposited, shall have jurisdiction to try offenses under this Act."

Article 138 of the Louisiana Criminal Code (Act 43 of 1942), Public Pay Roll Fraud, now LSA–R.S. 14:138, omitted Section 4 of Act 63 of 1940, supra. However, the comment following Article 138 of the Louisiana Criminal Code, published by authority of the State in 1942, stated:

"Section 4 of the 'deadhead' statute [Dart's Gen. Stats. (Supp.1941) Sec. 7773.4] provides for the venue of prosecutions. This is a procedural provision, and should be included, by amendment, in the Code of Criminal Procedure."

A reporter's comment to West's LSA–R.S. 14:138 states that, "Section 4 of the 'deadhead' statute provides for the venue of prosecutions. This is a procedural provision, and should be included, by amendment, in the Code of Criminal Procedure."

LSA–R.S. 15:13 is undoubtedly the amendment to which the above comments and suggestions referred; does it violate the constitutional provision that all trials shall take place in the parish in which the offense was committed by allowing an offender to be tried in any parish where a

substantial element of a crime has been committed?

The jurisprudence in which the question of venue was raised with respect to constitutional guarantees and the excellent law reviews (3 La.L.Review, p. 222; 4 La.L. Review, p. 321; Louisiana State Law Institute, Code of Criminal Procedure Revision, Expose Des Motifs, Title XIX, Jurisdiction and Venue, Leon D. Hubert, Jr., Reporter) have assisted us in our study and consideration of the issue presented.

In State v. Ellerbe, 217 La. 639, 47 So.2d 30, we stated in a footnote that, "This proviso [LSA–R.S. 15:13] must perforce be regarded as an aid or guide to the Courts in determining the question of venue; it obviously cannot expand the mandate of the Constitution or limit the right secured thereunder." We also stated that the test in determining venue is not whether the crime is a continuing one but whether it was perpetrated within the Parish where the prosecution is had.

In Chapter 1, Sub-Part B, Elements of Crimes, LSA–R.S. 14:7–14:12, a crime, criminal conduct, criminal consequences, criminal intent, and criminal negligence are listed and defined. "Substantial" has regard to essential elements. Webster's New World Dictionary, College Edition. It is entirely possible that some acts material and essential to the commission of a crime or offense and requisite to its consumma-

tion may occur in more than one parish. In 22 C.J.S. Criminal Law, § 177, p. 435, we find the following discussion with respect to venue in such situations:

> "Under the early English common law, when an offense consisted of a series of acts, some of which were done in one county and some in another, it was doubted that there could be a prosecution in either county, unless so much was done in the one as would constitute a complete offense. In the United States it is now very generally provided by statute that, where a crime is committed partly in one county and partly in another, that is, where some acts material and essential to the crime and requisite to its consummation occur in one county and some in the other, accused may be tried in either; and it has been held that such a statute is not repugnant to the constitutional provision that accused shall be entitled to a trial in the county where the crime was committed. Such statutes are remedial and are to be liberally construed, so as to effectuate the purpose to extend the lines of jurisdiction beyond the limits prescribed by the common law.

> "As a general rule, accused is answerable only in the county where the crime, or some part or effect thereof, was committed or occurred, and such a statute does not apply where the crime is complete in one county. A single, indivisible offense, not consisting of several parts, is not within the operation of the statute. Before it can become operative in any criminal case, one of two things must appear: Either the offense must be divisible, and each part must be unlawful in and of itself, and committed at a different time and place, or it must consist of more than one act, each of which acts, or the effect of each, must constitute an unlawful element of the offense, without the presence of which the offense could not be consummated. * *"

Wharton's Criminal Law and Procedure, Vol. IV, Sec. 1510, p. 98, sets forth:

> "In many states statutes have been passed providing for venue in either county, where a crime is committed partly in one county and partly in another. Such statutes apply only when the offense is divisible and when each of the parts committed within the different counties is itself unlawful. It is necessary that the completed crime be consummated by the combination of the criminal acts in the two counties. If the act committed in one county did not constitute any element of the crime charged, then such county does not have jurisdiction, a statute of the type here considered not being applicable. By definition such statutes do not apply

when the offense charged is committed solely within one county.

"The purpose of such statutes is the abrogation of the rule of the common law that when an offense was constituted by a series of acts, a part of which were done in one county and a part in another, there could be no prosecution in either, unless so much was done in the one as would constitute a complete offense. Having a remedial purpose, such statutes are to be liberally construed.

"The statutes in question have been applied to prosecutions for abortion, assault with intent to rape, bribery, the passing of worthless checks, offenses affecting children, conspiracy, embezzlement, extortion, false pretenses, false financial statements, forgery, uttering forged instruments, premeditated murder, homicide occurring in the course of kidnapping, second degree murder, manslaughter, voluntary manslaughter, offenses involving insurance, larceny, libel, liquor law violations, offenses involving chattel mortgages, the unlawful operation of motor vehicles, nuisances, prostitution and related offenses, robbery, securities act violations, seduction, subornation of perjury, and the sending of threatening letters. * * *"

With respect to continuing offenses, Wharton sets forth in Vol. IV, Sec. 1512, p. 102, the following:

"Some crimes are of such a nature that they may be committed continuously or consecutively in several counties. At the present time, by statutory provisions in many jurisdictions, the courts of each county or district in which an offense was continuously or consecutively committed has concurrent jurisdiction. On assumption of active jurisdiction by one of these courts, the concurrent jurisdiction of other counties ceases. * * * Today statutes frequently provide that when property was stolen in one county, or was taken in one county by burglary, robbery, larceny, or embezzlement, and brought into another county, the jurisdiction should be in either county." See, 30 A.L.R.2d 1265; Cf. Armour Packing Co. v. United States, 209 U.S. 56, 28 S.Ct. 428, 52 L.Ed. 681; United States of America v. Anderson, 328 U.S. 699, 66 S.Ct. 1213, 90 L.Ed. 1529.

In the case of Aldridge v. State, 232 Miss. 368, 99 So.2d 456, the Supreme Court of Mississippi considered a prosecution in which the defendant was indicted in the Circuit Court of Forrest County on a charge of seduction. Defendant contended that the trial court was without jurisdiction because there was a fatal variance as

to the venue alleged in the indictment and the proof introduced on the trial. The indictment charged that the offense was committed in Forrest County; the proof showed that the promise of marriage occurred in Forrest County, but that the act of intercourse occurred in Jones County. The Supreme Court found that both the promise of marriage and the act of intercourse were essential elements of the crime, and that the crime was committed partly in one county and partly in another.

The defendant further contended that Section 2429, Vol. 2A Recompiled, Mississippi Code of 1942, which provided, "When an offense is committed partly in one county and partly in another, or where the acts, effects, means, or agency occur in whole or in part in different counties, the jurisdiction shall be in either county in which said offense was commenced, prosecuted, or consummated, where prosecution shall be first begun," was violative of Article III, Section 26, of the Mississippi Constitution, which provided, among other things, that the accused shall have the right to a speedy and public trial by an impartial jury of the county where the offense was committed.

In answering the defendant's contention, the Supreme Court of Mississippi stated:

"In the case before us one of the essential elements of the crime was committed in Forrest County and another essential element of the crime was committed in Jones County. The above quoted statute, therefore, became applicable, and it was proper for prosecution to be first begun in either county. It is argued by the appellant, however, that to sustain the jurisdiction of the crime in Forrest County would be in contravention of Article III, Section 26 of the Mississippi Constitution, which provides, among other things, that the accused shall have the right to a speedy and public trial by an impartial jury of the county where the offense was committed. We do not think so. We think that where the crime is committed partly in one county and partly in another, the venue may be laid in either county without doing violence to the constitutional provision. It is manifest that the constitutional provision relates to crimes wholly committed in one county. Certainly it was not the intention of the framers of the constitution that one who commits a crime partly in one county and partly in another should not be amenable to the jurisdiction of the court in either county and should therefore be exempt from prosecution."

In the case of State v. Moore, 189 Wash. 680, 66 P.2d 836, we find the Court speaking of a statute somewhat similar to LSA–R.S. 15:13, as follows:

"Generally speaking, at the common law criminal offenses were deemed to be local, subject to prosecution only in the county where committed. To meet that situation, the rule was changed in this state by statute (Rem. Rev.Stat. § 2013) to provide that, where a public offense is committed, partly in one county and partly in another county, the jurisdiction is in either county. * * *

"Nor do we think Rem.Rev.Stat. § 2254, which was enacted to meet just such a situation as obtains in the case at bar, offends against the Sixth Amendment to the Constitution of the United States, which provides, in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed. * * *"
See, People v. Abbott, 47 Cal.2d 362, 303 P.2d 730; State v. Wilson, 38 Wash.2d 593, 231 P.2d 288.

In State v. Montgomery, 115 La. 155, 38 So. 949 (decided in 1905), this Court declared Section 988 of the Revised Statutes of 1870 [3] unconstitutional, but only insofar as it sought to provide that a criminal trial might be had in another parish than that in which the offense was committed, when it was committed within 100 yards from the boundary of the parish.

While this Court, in State v. Moore, 140 La. 281, 72 So. 965 (decided in 1916) approved the ruling in the Montgomery case, the rationale of the holding there is that a defendant charged with criminal libel was not amenable to the jurisdiction of the court of the Parish of East Feliciana, merely because the newspaper containing the libelous matter was distributed in that parish, since the offense was entirely begun and completed in the Parish of Orleans where the newspaper was printed and published and that mailing and delivery of the copies of the newspaper in other parishes were not to be regarded as separate and distinct offenses. In State v. Hart, 195 La. 184, 196 So. 62, however, it stated:

" * * * That statute, which was enacted originally as Section 12 of Act No. 121 of 1855, was declared unconstitutional, in the case of State v. Montgomery, 115 La. 155, 38 So. 949, but only in so far as the statute undertook to allow a prosecution to be had in a parish other than that in which the crime was committed, provided it

---

3. "When any crime or misdemeanor shall be committed on the boundary of two or more parishes, or within one hundred yards thereof, or within one hundred yards of any other boundary, or shall be begun in one parish and completed in another, it may be dealt with, inquired of, tried, determined and punished in either of the parishes in the same manner as if it had been actually and wholly committed therein."

was committed within 100 yards from the boundary line of the parish in which the prosecution is had. That constitutional objection has been removed by a provision in Section 9 of Article I of the Constitution of 1921, allowing a prosecution to be had in either parish where the crime was committed within 100 yards from a boundary line between two parishes. *But we are not aware of any constitutional objection to the provision in Section 988 of the Revised Statutes, with reference to a crime that was begun in one parish and completed in another. * * *"* (Emphasis ours.) [4]

Thus it will appear that the Montgomery and Moore cases are not apposite to the instant case.

Act 147 of 1942 was approved by the Governor on July 11, 1942. This Act, amending and re-enacting Article 13 of the Louisiana Code of Criminal Procedure of 1928, was no doubt passed because of the words in the Hart case which we have emphasized, supra. Cf. State v. Maxie, 221 La. 518, 59 So.2d 706.

In view of the foregoing, we conclude that LSA–R.S. 15:13 is constitutional and not violative of Article I, Section 9, of the Louisiana Constitution of 1921. The constitutional provision applies to offenses that are wholly committed in one parish, whereas LSA–R.S. 15:13 is an aid or guide to the courts in determining the question of venue and applies to the trial of offenses where a substantial element is committed in more than one parish. It is not repugnant to the constitutional provision; it is remedial and procedural legislation. Its object and purpose is to protect society and effectuate the proper administration of criminal justice.

The determination of what constitutes a substantial element of the offense charged is peculiar to each prosecution, which has a separate life of its own. The problems of one case are not the problems of another, and the determination in each case must necessarily be made by the courts.

We now pass to consideration of the correctness of the finding of the trial judge in the instant case that a substantial element of the crime charged against de-

4. State v. Smith, 194 La. 1015, 195 So. 523 (decided March 4, 1940, rehearing denied April 1, 1940), involved the offense of embezzlement; State v. Cason, 198 La. 828, 5 So.2d 121, involved the offense of embezzlement; State v. Pollard, 215 La. 665, 41 So.2d 465, involved the offense of theft; State v. Terzia, 194 La. 583, 194 So. 27, State v. Todd, 194 La. 595, 194 So. 31, and State v. Coenen, 194 La. 753, 194 So. 771, involved the offense of dual office holding. These cases, cited by defendant, are not apposite; the instant case involves the offense of Public Pay Roll Fraud, a statute designed to punish a specific act.

The civil cases cited by defendant, involving LSA–R.S. 7:189, relating to checks, are also not apposite.

fendant occurred in the Parish of East Baton Rouge. Does the stipulation of facts, considered with the allegations of the indictment and the provisions of LSA–R.S. 14:138, show that any act of defendant set forth in the stipulation constitutes a "substantial element of the crime" alleged to have been committed by the defendant in the Parish of East Baton Rouge?

Defendant is charged in one count with violating LSA–R.S. 14:138 between the dates of August 18, 1960 and January 15, 1961. The stipulation recites two dates within that period (August 24, 1960 and December 29, 1960) when defendant drew a warrant addressed to the State Auditor requesting him to direct the State Treasurer to pay to him, as State Fire Marshal, sums of money. These two warrants were honored and paid out of funds on deposit in East Baton Rouge Parish, while Kimberlin was being carried on the State Fire Marshal's records. Thereafter, the checks payable to Gibson O. Kimberlin, out of the funds derived from East Baton Rouge Parish by defendant, were sent from the State Fire Marshal's Office by defendant to Kimberlin in Baton Rouge; Kimberlin received the checks in Baton Rouge and cashed them in Baton Rouge, Parish of East Baton Rouge.

The foregoing acts occurred during the time defendant is alleged to have had knowledge of the fact that Gibson O. Kim-

berlin was receiving payment or compensation for services not actually rendered by him or for services grossly inadequate for such payment or compensation, as denounced by the statute.

The indictment virtually tracks LSA–R.S. 14:138. While the statute condemns the offense set forth in the disjunctive, the State charged the violation of the statute in the conjunctive. This appears to be in accordance with good pleading in criminal cases. "Several distinct offenses, * * * disjunctively enumerated in the same law or in the same section of a criminal statute, may be cumulated in the same count, when it appears that they are connected with the same transaction and constitute but one act, but in that event they must be charged conjunctively." LSA–R.S. 15:222; State v. Almerico, 232 La. 847, 95 So.2d 334; State v. Morgan, 238 La. 829, 116 So.2d 682. Undoubtedly the charging of defendant under the first part of the second paragraph of LSA–R.S. 14:138 (carrying, causing to be carried, or permitting to be carried), as well as charging him with paying an employee for services rendered with knowledge that such employee was receiving payment or compensation for services not actually rendered or for services grossly inadequate for such payment, was done for the purpose of showing the system employed by the defendant in his alleged violation of the statute.

In the case of State v. Matheny, 194 La. 198, 193 So. 587, C. T. Matheny was indicted by the Grand Jury of the Parish of Morehouse for permitting his name to be carried as an employee on the pay roll of the State Board of Health and receiving salary for services not actually rendered. This Court affirmed a ruling of the trial judge overruling a plea to the jurisdiction. Defendant had contended that the venue of the offense charged was in the Parish of Orleans where the pay roll of the State Board of Health was kept. The State argued that the venue of the offense charged was in the Parish of Morehouse where relator lived, where he received and cashed his pay checks, and failed to perform any services therefor. Among other pronouncements, this Court stated that, "The chief factor or principal ingredient of the offense is, in receiving a salary or pay for services not actually rendered."

We believe that the foregoing reasoning of the Matheny Case is applicable to the present case. In order for an employee to cash his pay check, he has to receive such pay check. Herein, the stipulation of facts sets forth that defendant sent Gibson O. Kimberlin his pay checks and said pay checks were cashed in the Parish of East Baton Rouge.[5]

It cannot be gainsaid that the checks, after leaving Orleans Parish, had to cross the East Baton Rouge Parish line and enter said Parish to be delivered to said Gibson O. Kimberlin.

In view of the language of LSA–R.S. 14:138 (a statute designed to punish a specific act), the allegations of the indictment which track it, and the stipulation of facts, we conclude that the trial judge was correct in overruling the motion to quash for lack of jurisdiction and holding that a substantial element of the crime charged against defendant occurred in the Parish of East Baton Rouge.

For the reasons assigned, the stay order herein issued is recalled, the rule nisi is discharged, and the ruling of the trial judge is affirmed.

FOURNET, Chief Justice (dissenting).

One of the sacred rights guaranteed to every individual under the Bill of Rights adopted as a part of our Louisiana constitution of 1921 is that the trial of all criminal prosecutions "shall take place in the parish in which the offense was committed, unless the venue be changed." Those selected by the people of this state to draft the constitution by which they (the people) wished to be governed thus, in clear and unequivocal language, fixed the territorial limits of the courts having jurisdiction in criminal matters. Consequent-

---

5. The ruling of the trial court in the case of State of Louisiana v. Gibson O. Kimberlin, No. 45,777 of the Docket of this Court, has this date been affirmed.

ly, no one can be legally charged with the commission of any offense except before the court within the territorial jurisdiction where the crime was committed. Nor can one accused of an offense be brought to trial in any parish of this state other than the one in which the offense was committed, unless the venue had been changed in the manner provided by law. Hence, a court of any parish other than the one in which an offense has been committed (except where a change of venue has been secured) lacks jurisdiction to try such an offense, and a conviction in such a case would be an absolute nullity and could not support a plea of former jeopardy. See, State v. Montgomery, 115 La. 155, 38 So. 949; State v. Moore, 140 La. 281, 72 So. 965; State v. Nugent, 191 La. 198, 184 So. 746; and State v. Smith, 194 La. 1015, 195 So. 523.

A mere reading of the pertinent provision of the only portion of the "Public Pay-roll Fraud" statute applicable here, as reflected by Paragraph No. 2 of R.S. 14:138 [1] will disclose that the gravamen of the of-

fense here charged is *the inclusion on an employment list of the name of a person* or persons who are *known by the public official responsible for such inclusion to be rendering no service,* or else that such services are grossly inadequate, *for the compensation reflected on the list as being paid.* It necessarily follows, therefore, that in order to determine whether the court in and for the Parish of East Baton Rouge has jurisdiction of the offense allegedly committed by the defendant in this case, i. e., violation of Paragraph (2) of R.S. 14:138, it must be ascertained whether the facts disclose the crime, if committed, was committed in that parish. State v. Montgomery, 115 La. 155, 38 So. 949; State v. Kinchen, 126 La. 39, 52 So. 185; State v. Malone, 133 La. 56, 62 So. 350; State v. Moore, 140 La. 281, 72 So. 965; State v. Hogan, 157 La. 287, 102 So. 403; State v. Nugent, 191 La. 198, 184 So. 746; State v. Smith, 194 La. 1015, 195 So. 523; State v. Briwa, 198 La. 970, 5 So.2d 304; State v. Ellerbe, 217 La. 639, 47 So.2d 30; State v. International Paper Co., 201 La. 870, 10 So.2d 685; and

---

1. The pertinent portions of this statute are as follows: "Public pay roll fraud is committed when: (1) Any *person* shall *knowingly receive any payment* or compensation, or *knowingly permit his name to be carried on any employment list* or pay roll for any payment or compensation from the state, *for services not actually rendered by himself,* or for services grossly inadequate for the payment or compensation received or to be received according to such employment list or pay roll; (2) Any *public officer* or public employee *shall carry,* cause to be carried, or permit to be carried, directly or indirectly, *upon the employment list* or pay roll of his office, *the name of any person as employee, or shall pay any employee,* with *knowledge that such employee is receiving payment or compensation for services not actually rendered* by said employee or for services grossly inadequate for such payment or compensation." (The emphasis has been supplied by me.)

State v. Bloomensteil, 235 La. 860, 106 So. 2d 288.

According to the stipulation of facts, the defendant is the State Fire Marshal who, in the performance of his duties, is required to reside in the Parish of Orleans, where his office is located and where all of the records of his office are kept, including the list (or payroll) of persons employed and paid through his office, and on which list was *included* the name of Gibson O. Kimberlin, who, it is asserted in the indictment, received payment from the State Fire Marshal without performing any service therefor, or services grossly inadequate for such payment or compensation; that the funds out of which *the State Fire Marshal caused this employee to be paid* were deposited in banks *outside* of the Parish of East Baton Rouge; that all checks of the State Fire Marshal in connection with the maintenance and operation of his office, including those issued to Kimberlin as a purported employee of that office, were *drawn* in the office of the State Fire Marshal in Orleans Parish, *signed* by the State Fire Marshal in Orleans Parish, and *issued* to Kimberlin out of the office of the State Fire Marshal in Orleans Parish; and, to quote this stipulation as set out in the majority opinion, Kimberlin *"was paid by the issuance of checks by the Fire Marshal* payable to the order of Gibson O. Kimberlin."* (The emphasis has been supplied by me.)

It is obvious from the foregoing that the offense *in the instant case,* if committed, was committed *wholly* in the Parish of Orleans and not in the Parish of East Baton Rouge. A mere reference to the "Public Payroll Fraud" statute as quoted in full in Footnote No. 1 will disclose that *two* separate sets of acts are there sought to be denounced as crimes, and *two* separate and distinct individuals are sought to be held accountable for the crimes thereunder, the acts sought to be made a crime in Paragraph (1) being those of an *individual* who, as a purported employee, knowingly *receives* compensation for which no, or grossly inadequate, services are performed, through the device of *permitting* his name to be carried on a public payroll; while the acts sought to be made a crime in Paragraph (2) are those of a *public official* in *including* an individual's name on a public payroll and *paying* compensation to that person for services *known* to be inadequate and not actually performed.

This was readily recognized by the district attorney in and for the Parish of East Baton Rouge, for he, acting as the legal adviser of the grand jury, did not cause Kimberlin and Coon to be charged jointly in one indictment with the violation of this statute, but, instead, in two separate and distinct indictments, one of which charged Kimberlin, *as an employee,* had violated the provisions of Paragraph (1) of R.S. 14:138, the indict-

ment tracking these provisions; the other charging that Coon, *as a public official,* had violated the provisions of Paragraph (2), the indictment tracking these provisions.

Conceding, however, that counsel for the state is correct in his contention that R.S. 15:13 is constitutional (with which contention I do not agree, as will hereinafter be shown), the manner in which the State Fire Marshal secured the funds for the operation of his office from the State Treasurer cannot, by any stretch of the imagination, be said to be an element of the crime with which Coon, as State Fire Marshal, is here charged, as is being held by the majority, a fact that is reflected by the clear provisions of Paragraph (2) of R.S. 14:138.

It is true, as admitted in the stipulation of facts, that the State Fire Marshal secured funds for the operation of his office by drawing, *in Orleans Parish,* warrants that were then deposited to his account in banks *outside* the Parish of East Baton Rouge, and that these warrants were honored out of funds on deposit to the account of the State Treasurer in the Parish of East Baton Rouge. But Kimberlin *was not paid* when the warrants drawn by Coon were honored in Baton Rouge for the very simple reason that once they were honored *Coon, as State Fire Marshal, was being paid by* the State Treasurer, *amounts appropriated by the legislature for the maintenance of his office,* and the funds so obtained were

then placed in other accounts in the name of Coon as State Fire Marshal *in banks outside* East Baton Rouge Parish. Kimberlin *was paid from these funds deposited in the name of the State Fire Marshal outside East Baton Rouge Parish after* his name had been *included* on the payrolls made up in the office of the State Fire Marshal in Orleans, and that were kept in Orleans Parish.

The fact that the checks payable to Kimberlin—*drawn in* and *issued from* the office in Orleans Parish, and *honored by* banks *outside* of East Baton Rouge Parish—were "received" by him in the Parish of East Baton Rouge, and there used for his own purposes, *are not elements of the crime with which Coon has been charged,* but, rather, of the crime with which Kimberlin has been charged under the provisions of Paragraph (1) of R.S. 14:138.

In my opinion, however, Act No. 2 of 1928, as amended by Act No. 147 of 1942 (now R.S. 15:13) to include the provision "that where the several acts constituting a crime shall have been committed in more than one parish, the offender may be tried in any parish where a substantial element of the crime has been committed," is clearly unconstitutional. It is an attempt by the legislature to extend the jurisdiction in which the trials may be held beyond the

limits fixed by the Constitution in Section 9 of Article I.

An interesting and elaborate dissertation on this subject is to be found in the decision of this court in State v. Moore, supra, written in 1916 by the late Chief Justice Charles O'Niell while still only an associate on this bench. There he pointed out that prior to the adoption of the Constitution of 1864 the several constitutions of our state, beginning with that of 1812, simply required that an accused "have a speedy public trial by an impartial jury *of the vicinage,*" with the result that when the legislature in 1855 adopted its Act No. 121 providing, in Section 12, "[That] When any crime or misdemeanor shall be committed on the boundary of two or more parishes, or within one hundred yards thereof, or within one hundred yards of any other boundary, or shall be begun in one parish and completed in another, it may be dealt with, inquired of, tried, determined and punished in either of the parishes in the same manner as if it had been actually and wholly committed therein," this was permissible and within the constitutional limitation, since the trial was one by an impartial jury *"of the vicinage."* However, after the Constitution of 1864 was adopted, this provision was changed to read as follows in Article 105: "The accused shall have a speedy public trial by an impartial jury *of the parish in which the offence shall have been committed,*" rather than "of the vicinage." (The emphasis has been supplied by me.)

In view of this change, the author of the opinion in the Moore case held emphatically that "Article 105 of the Constitution of 1864 * * * *repealed* section 12 of Act No. 121 of 1855. The provision quoted from article 105 of the Constitution of 1864 was embodied in article 6 of the Bill of Rights, in the Constitution of 1868, in precisely the same language but with this addition, 'unless the venue be changed.' *Notwithstanding the provisions of article 6 of the Bill of Rights in the Constitution of 1868, and in direct conflict therewith,* the Legislature re-enacted section 12 of Act No. 121 of 1855 as Section 988 of the Revised Statutes, approved March 14, 1870. *The law enacted as section 988 of the Revised Statutes,* however, *was again repealed by this provision in article 7 of the Bill of Rights of the Constitution of 1879, viz.:* 'That the accused in every instance shall be tried in the parish wherein the offense shall have been committed, except in cases of change of venue.' The same provision was made in article 9 of the Bill of Rights in the Constitution of 1898, and is retained in the Constitution of 1913, in this language, viz.: 'That all trials shall take place in the parish in which the offense was committed, unless the venue be changed.'" (The emphasis has been supplied by me.)

In thus holding, the court followed the decision of State v. Montgomery, 115 La.

155, 38 So. 949, decided in 1905, and that decision followed expressly, by adopting *unanimously* the dissenting opinion of Mr. Justice Blanchard in State v. Harris, 107 La. 325, 31 So. 782, decided in 1902—some 60 years ago—in which a clear and excellent analysis of these provisions, their application, extent, and limitation is to be found. Significantly, the majority opinion in the Harris case had held that Section 988 of the Revised Statutes of 1870 *was not repealed but only modified* by Article 9 of the Constitution of 1898, whereas the dissent (adopted in full by this court in the Montgomery case and followed in the Moore case) pointed out in *no uncertain terms* that this constitutional provision *rendered Section 988 invalid and a conviction in a parish other than the one where the* crime was committed was absolutely null and void.

The majority opinion, in reliance on what is obviously *dictum, pure and simple,* in the opinion written by Chief Justice O'Niell in State v. Hart, 195 La. 184, 196 So. 62,[2] some 24 years after his decision in the Moore case, and without reference thereto, disregards not only these basic principles guaranteed to the individual in our Bill of Rights,

but also these solemn pronouncements with respect to them and their effect, when it declares the Montgomery and Moore cases are not controlling here. Furthermore, in attempting to differentiate these cases, the majority overlooks another very important feature, i. e., that the court, in making the above quoted pronouncements, was disposing of live and well-pleaded issues in the case. Contrary to distinguishing them, the majority has, in effect, overruled them after these many years, *and without any sound reason therefor* under the admitted facts of this case.

In reaching its conclusion, the majority opinion also obviously overlooks the fact that the drafters of the 1921 by including the same provision that has been in all constitutions since the one adopted in 1868— "that all trials shall take place in the parish in which the offense was committed, unless the venue be changed"—did add as a further provision language tracking a portion of Section 988 of the Revised Statutes of 1870 (showing a thorough familiarity with this statute and its provisions) by authorizing the legislature to "provide for the venue and prosecution of offenses committed within one hundred feet of the boundary

2. " * * * we are not aware of any constitutional objection to the provision in Section 988 of the Revised Statutes, with reference to a crime that was begun in one parish and completed in another. *The only question, however, that we are called upon now to decide is whether* *the district court in Lincoln parish has jurisdiction over this case; and, for the reasons which we have stated (facts), our conclusion is that the district court in that parish has jurisdiction.*" (The emphasis and word within brackets has been supplied by me.)

line of a parish," [3] yet excluded therefrom the remaining provisions in Section 12 of Act 121 of 1855 and Section 988 of the Revised Statutes of 1870.[4] By thus deliberately failing to grant to the legislature the authority to extend the provisions of Section 9 of Article I on this subject still further, as is being asserted in the majority opinion with respect to "substantial element" of a crime, the drafters of the 1921 Constitution, and the people in adopting it, not only placed a stamp of approval and affirmation of the decisions in the Montgomery and Moore cases, but again repudiated the provisions of the 1855 and 1870 statutes in conflict therewith, as well as those of any other statute or statutes on the subject that go beyond the specific power and authority granted to the legislature in Section 9 of Article I.

I must, therefore, respectfully dissent.

3. The legislature has exercised the authority thus granted by adopting R.S. 15:15, which provides in effect that any offense committed on the boundary line of two parishes, or within 100 feet of the dividing line, may be prosecuted in either parish.

4. "[That] When any crime or misdemeanor shall be committed on the boundary of two or more parishes, or within one hundred yards thereof, or within one hundred yards of any other boundary, *or shall be begun in one parish and completed in another*, it may be dealt with, inquired of, tried, determined and punished in either of the parishes in the same manner as if it had been actually and wholly committed therein." It is ob-

vious, therefore, that Chief Justice in including in his decision in State v. Hart, 195 La. 184, 196 So. 62, the *dictum* quoted in Footnote No. 2 not only overlooked the fact he himself *had specifically held these provisions unconstitutional*, and overruled, but gave no consideration whatever to the fact that the drafters of the Constitution of 1921, although fully cognizant of this underscored portion of these statutes, had refused deliberately to incorporate it in the grant to the legislature of authority with respect to what statutes it might enact under the power conferred in Section 9 of Article I. (The emphasis has been supplied by me.)