BARHAM, Justice
(dissenting).
I cannot agree with the reasoning and the conclusion of the majority in regard to Bill of Exception No. 7.
Mrs. Aline Bulliard Carter was killed in St. Martin Parish, and Russell Alexander was indicted by the grand jury of that parish for her murder. He pleaded not guilty when arraigned, and in compliance with the court order for the filing of all pleas and motions and in conformity with Louisiana practice he filed simultaneous motions to quash the indictment and for a change of venue. The Sixteenth Judicial District Court for St. Martin Parish took the motion to quash “under advisement”, and on October 15, 1965, acted upon the motion for a change of venue by granting a change of venue to St. Mary Parish, which *581 is in the same judicial district. The minutes of the Sixteenth Judicial District Court for St. Mary Parish reflect that the indictment was quashed on December 7, 1965. On December 10, 1965, the grand jury for St. Mary Parish indicted the defendant for the murder of Mrs. Aline Bulliard Carter which had occurred in St. Martin Parish.
Bill of Exception No. 7 was reserved to the overruling of the defendant’s motion in arrest of judgment, based upon the nullity of the indictment returned by the grand jury of St. Mary Parish which charged the defendant with murder in St. Martin Parish. Under this indictment the defendant was tried in St. Mary Parish, found guilty, and sentenced to death.
The grand jury system is a product of the common law, and provisions for it in Louisiana are patterned after common law and have no source in civil law authorities. Therefore interpretations of the rights and responsibilities of the grand jury must be sought under common law as well as Louisiana law and jurisprudence.
The grand jury function is twofold: To return indictments to bring an accused to trial, and to protect the citizens from unfounded accusations whether from the goverment or partisan passion or private enmity. Hurtado v. People of State of California, 110 U.S. 516, 4 S.Ct. 111, 292, 28 L.Ed. 232 (1884); 24 Am.Jur., Grand Jury § 3. English common law theorized:
“* * * no man can be convicted at the suit of the king of any capital offense, unless by unanimous voice of twenty-four of his equals and neighbors: That is, by twelve at least of the grand jury, in the first place, assenting to the accusation, and afterwards by the whole petit jury of twelve more finding him guilty upon his trial. * * * ” 4 Bl. Com. 306. (Italics here and elsewhere have been supplied.)
The tradition of the grand jury is incorporated into the Fifth Amendment of the United States Constitution, which reads:
“No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury * *
Article 1, Section 9, of the Louisiana Constitution provides:
“In all criminal prosecutions the accused shall have the right to a speedy public trial by an impartial jury; * * * all trials shall take place in the parish in which the offense was committed, unless the venue be changed; * * * provided, that no person shall be held to answer for a capital crime unless on a presentment or indictment by a grand jury * * ' * »
It is provided by Article 7, Section 42, of the Louisiana Constitution:
*583 “A grand jury of twelve,,nine of whom shall constitute a quorum and must concur to find an indictment, shall be empanelled in each parish twice in each year * * *_»
These constitutional provisions secure to one accused of a capital crime, first, the right to have the charge preferred by indictment before he can be tried, and second, the right after indictment to a speedy public trial by an impartial jury.
“An indictment is an accusation at the suit of the king, (or state,) by the oaths of twelve men, (at the least, and not more than twenty-three,) of the same county wherein the offense zvas committed, returned to inquire of all offenses in general in the county, determinable by the court in which they are returned, and finding a bill brought before them to be true.” 5 Bacon Abridgement 48.
“Every indictment is to be found by twelve lawful, liege freeman of the county where the crime was committed, returned by the proper officer.” 5 Bacon Abridgement 52.
“It seems to be generally agreed at this day that by the common law no grand jury can indict any offense whatsoever zvhich doth not arise within the limits of the precincts for which they are returned.” 2 Hawkins’ Pleas of the Crown, Sec. 34, p. 313.
“According to common law doctrine all crimes are local. In other words, the prosecution for them can be carried on only in the county of their commission. A grand jury cannot inquire concerning them except within such county.’’ 1 Bish. Cr.Proc. § 65.
Clear and exacting mandates are set forth for the proceedings in criminal prosecutions. While changes and modifications in the proceedings have occurred and do occur, these changes must come within the framework of the constitutional provisions and by express legislative enactments. Thus the change of venue provisions must be construed under constitutional authority and compatably with other provisions of the law. They must be construed strictly with cognizance and perception of the purpose for which they were intended, i. e., “to obtain an impartial trial”. Former LSA-R.S. 15:292, 15:293.[1]
The uniform and controlling law applicable to the case before this court is succinctly stated in 4 Wharton’s Criminal Law and Procedure, sec. 1729, p. 515 (Anderson ed. 1957) :
“Both at common law and under the constitutions and statutes, in the absence of some statutory modification, an indictment must be found by the grand jury of the county or district, in which the offense was committed, although from a
*585 very early period many statutory exceptions to the general rule have existed.” See also 21 Am.Jur.2d Criminal Law § 383 and 399.
Under common law, constitutional authority, and statutory provision, the grand jury of the county (or the parish) where the crime was committed has the sole right to bring in an indictment; and a change of venue for the purpose of grand jury action is not allowed. Former LSA-R.S. 15:291 provided:
“No change of venue shall be awarded until the accused shall have been arraigned and shall have pleaded ‘not guilty’.”
The creators of Louisiana law and jurisprudence never envisioned that an indictment could be returned in any locality other than the parish in which the offense is alleged to have been committed except by specific constitutional or statutory allowance. A constitutional exception is afforded in Article 1, Section 9:
“ * * * provided further, that the Legislature may provide for the venue and prosecution of offenses committed within one hundred feet of the boundary line of a parish. * * * ”
This exception was previously authorized by a statute which this court held unconstitutional in State v. Montgomery, 115 La. 155, 38 So. 949 (1905). Thereafter it was incorporated into the Constitution. See also State v. Moore, 140 La. 281, 72 So. 965 (1916). For statutory authority in Louisiana which established venue in a parish other than where the offense was “committed”, see former LSA-R.S. 15:13, 15:-14, and 15:15. See also State v. Coon, 242 La. 1019, 141 So.2d 350 (1962)
The majority opinion states our issue: “The record reflects the trial judge quashed the indictment after the change of venue. Hence, the precise question presented is whether the Grand Jury of the parish to which the venue of a criminal prosecution has been changed may return a corrective indictment for the same offense, when the court quashes the indictment after the change of venue. The question is res nova in Louisiana.

The authorities elsewhere are divided on the question

The majority has posed the issue correctly, but the last statement quoted is erroneous, for the authorities cited thereafter are not supportive of the statement. One may say that a division on the question has been created by the conclusions and opinions expressed in the legal commentaries in an attempt to interpret the jurisprudence, but there is no division of the jurisprudence on this subject.
Joyce on Indictments, sec. 121, p. 146 (2d ed. 1924), and 18 A.L.R. 715 (1922), cited by the majority, do state that there is a conflict of authority as to where a new *587 indictment should be procured after a case is removed from the county where the crime was committed on a motion for change of venue. Their statement that there is authority for the return of a new indictment for the same offense by the grand jury of the county to which the trial was transferred cites only one case, Watkins v. United States, 3 Ind.T. 281, 54 S.W. 819 (900).
Watkins v. United States has been misquoted, misinterpreted, and misused by the commentaries for 67 years. The case was on appeal from the United States court for the Southern District of the Indian Territory. Special federal statute provided:
"* * * the Southern district [Indian territory] shall consist of all the Chickasaw country, and the places for holding court in said district shall be at Ardmore, Purcell, Pauls Valley, Ryan and Chickasha.” (p. 820) Act of March 1, 1895, sec. 1 (28 Stat. 694; Ind.T.Ann.St.1899, sec. 45).
The same statute, Section 7 (51), provided:
“* * * that all prosecutions for crimes and offences of which the United States court in the Indian Territory shall have jurisdiction, shall be had within the district in which said offence shall have been committed, and in the court nearest or most convenient to the locality wherein it is committed, to be determined by the judge on motion to transfer the trial of the case from one court to another. * * *” (p. 820)
The court finally concluded:
“* * * But, if this were not true, by virtue of the statute of 1895 (Ind.T. Ann.St.1899), supra, in this jurisdiction an indictment found by any of the courts of the district, although not the nearest or most convenient to the locality zvhere the offense was committed, would be a valid indictment; for in such case the statute declares that the place of trial shall be determined by the judge 'on motion to transfer the trial of the case from one court to another’.” (p. 821)
In obiter dictum the court had previously stated:
''* * * Where a change of venue is taken from one court to another, the latter one has full jurisdiction of the case. If it comes to it with an imperfect indictment, it may use its own grand jury to correct it, or do any other thing that the court from which it came could do, incident to the trial, if the case were pending there.” (p. 821)
Even if this were not dictum, it is not applicable to change of venue between counties in the various states of the United States. The Southern District was the only territorial limit assigned for this part of Indian Territory. There were no smaller territorial or geographical subdivisions within the district. The places for holding *589 court listed in the statute were villages with no specific geographic limitations or specifications. There can he no comparison of this federal case arising in Indian Territory under special federal statute with county (parish) venue changes within states where similar statutes do not exist. The reasoning in dictum in Watkins v. United States has not been applied in any court of any state in the United States. If Watkins stands for anything, it stands alone.
16 C.J. sec. 335, p. 220, published in 1918, cites State ex rel. Adams v. Grimes, 80 Wash. 14, 141 P. 184 (both cited by the majority in the instant case), as authority for its statement:
“* * * or a new complaint to be filed correcting the old one in any particular, even to allowing a change therein as to the offense charged against the defendant * *
State ex rel. Adams v. Grimes was a prosecution on “complaint” before a justice of the peace, charging the crime of assault in Ritzville Precinct, Adams County. A “change of venue” was granted by the justice of the peace before whom the complaint was filed to another justice of the peace of the same precinct (see Hawkins’ Pleas of the Crown, supra). This case merely holds that the second justice of the peace in the same precinct and county had the right to allow a new complaint to be filed “correcting the old one in any particular”. How can one rely upon this justice-of-the-pcace case of “recusal” as having meaning and effect on change of venue between counties or parishes within the state?
21 Am.Jur.2d, Criminal Law § 434, p. 439, is cited by the majority. The appropriate statement from that section is:
“It has been held that the court to which an indictment has been transferred on a change of venue is not divested of jurisdiction by a dismissal, nolle prosequi, or mistrial, and retains exclusive jurisdiction to try the case after a new indictment for the same offense.”
This section cites Johnston v. State, 118 Ga. 310, 45 S.E. 381, 46 S.E. 488, which is certainly authority for the opinion expressed in Am.Jur.2d. Many jurisdictions hold that after dismissal or a nolle prosequi, a second indictment returned in the original county must be tried in the county to which venue was changed.
The majority cites 22 C.J.S. Criminal Law § 217, p. 564, and I quote therefrom:
“ * * * and, if the indictment be quashed, or a nolle prosequi entered, a new indictment may be found by a grand jury of the county to which the removal is made * * (p. 565)
The only authority cited in support of this statement is Kelley v. Commonwealth, 189 Ky. 778, 225 S.W. 739. Kentucky Statutes (Carroll) 1915, sec. 1117, p. 674, and Carroll’s Kentucky Statutes (1922), 6 *591 ed., sec. 1117, p. 536, and Kentucky Revised Statutes 1944, sec. 452.280 (1117), p. 2938, all contain the following language:
“* * * If the indictment is quashed or a nolle prosequi entered, a new indictment may be found, from time to time, by a grand jury of the county to which the action was removed * *
All of the Kentucky cases which are cited loosely throughout the commentaries as authority for many propositions are merely authority for the previous conclusion from Wharton’s Criminal Law and Procedure, supra:
“* * * From a very early period many statutory exceptions to the general rule have existed.”
Woods v. Commonwealth, 285 Ky. 275, 147 S.W.2d 690; Jennings v. Commonwealth, Ky., 13 Ky.Law Rep. 79, 16 S.W. 348; Parker v. Commonwealth, 12 Bush. (Ky.) 191 (1876); Gearhart v. Commonwealth, 129 Ky. 458, 112 S.W. 572, are all governed by the specific statutes cited above.
The only other authority cited by the majority is Gonzalis v. Lynch, Okl.Cr., 282 P.2d 255, 257 (1955), and this decision is actually in opposition to the view taken by the majority:
“* * * A change of jurisdiction must come by reason of the accused’s application for a change of venue, after the issues are joined and the case ready for trial. It has been held that jurisdiction over the cause is one thing; the power and duty to find a new bill of indictment upon whose charges that cause shall be tried, is another and totally distinct and different thing. State v. Patterson, 73 Mo. 695. There is a dearth of authority on this question but the cases have been collected and discussed in 18 A.L.R. 706, Ex parte Lancaster, 206 Ala. 60, 89 So. 721, wherein the Alabama court said: ‘The removal of an indictment to another county for trial does not deprive the grand jury of the county where the crime was committed of jurisdiction to find a new indictment in case the first one is dismissed for any cause.’ ”
Having dealt with the “authorities” supposedly supportive of the majority opinion, I will turn now to the jurisprudence in the United States which has effect upon the question presented, directly or indirectly, by allusion or by analogy. “No person can be tried for a felony except upon an indictment preferred by the grand jury of the county in which the offense is alleged to have been committed.” Ex parte Slater, 72 Mo. 102 (1880); State v. Patterson, 73 Mo. 695 (1881); State v. Billings, 140 Mo. 193, 41 S.W. 778 (1897); State v. Goddard, 162 Mo. 198, 62 S.W. 697 (1901); State ex rel. English v. Normile, 108 Mo. 121, 18 S.W. 975 (1891); State v. Bartlett, 170 Mo. 658, 71 S.W. 148, 59 L.R.A. 756. See Johnston v. *593 State, supra; Ruffin v. State, 28 Ga.App. 40, 110 S.E. 311 (1921), allowing an indictment to be returned in the original county but holding that trial under the original county’s second indictment would remain with the transferee county. See also State v. Tucker, 58 N.Dak. 82, 224 N.W. 878 (1929); State v. Woods, 24 N.D. 156, 139 N.W. 321 (1912) ; Keefe v. District Court of Carbon County, 16 Wyo. 381, 94 P. 459 (1908); Ex parte Lancaster, 206 Ala. 60, 89 So. 721, 18 A.L.R. 706, Annotation 714; Phillips v. Morrow, 213 Ala. 139, 104 So. 260 (1925); Ex parte Patton, 206 Ala. 700, 89 So. 924 (1921) ; State v. Lyts, 25 Wash. 347, 65 P. 530; 1 Bish. New Cr. Proc. § 714; Stovall v. State, 97 Tex.Cr.R. 71, 260 S.W. 177 (1921).
The jurisprudence supports my contention that not merely the prevailing but the uncontradicted law is that, in the absence of statutory authority specifically to the contrary, the exclusive venue, more particularly the exclusive place, for the return of an indictment is the parish or county within which the offense occurred. There is no authority in any state which has allowed an indictment to be returned in the county to which venue has been changed, in the absence of specific statute similar to that quoted from the Kentucky Revised Statutes 1944, supra.
The final argument of the majority is that former LSA-R.S. 15:209 and 15:296 authorized the parish to which venue has been changed to indict by its own grand jury after the first indictment has been quashed. Former LSA-R.S. 15:296 stated:
“The clerk of the court to which any cause shall have been thus removed shall, on receipt of the indictment and other papers, enter the cause upon the docket of his court; and it shall be heardt tried and determined in the same manner as if the proceedings had originally been instituted therein.”
The majority says:
“The code article vests the court of that parish with the authority to proceed ‘in the same manner as if the proceedings had originally been instituted therein’. The grant of authority is extremely broad.”
The majority fails to give import to the words of limitation introducing the last clause of that article — the words “heard, tried, and determined”, which are limiting of the proceedings to be had. A grand jury indictment cannot be considered a hearing, a trial, or a determination.
The majority has misinterpreted former LSA-R.S. 15:209 by overemphasizing and unduly stressing the word “triable”, and has thereby failed to perceive the true intent and purpose of the entire statute. That statute read:
“The grand jury shall inquire into all crime punishable with capital punishment and into all other crimes triable within. *595 the parish, when their attention has been been directed to the subject of such crime either by instructions from the court or at the instance of the district attorney, and the grand jury ought to find an indictment in every case submitted to them in which, in their judgment, the evidence before them, if unexplained and uncontradicted, would warrant a conviction.”
The lawmakers used the word "triable” advisedly instead of using some such word as “committed” or “occurring”; for if the grand jury were given authority to inquire only into crimes “committed” or “occurring” within the parish, such a statute would conflict with the various constitutional and statutory provisions by virtue of which the grand jury may inquire into crimes committed within 100 feet of the parish border, crimes of which a substantial element occurs within the parish, crimes committed in moving vehicles, and crimes committed on bodies of water which are parish boundaries. La.Const. 1921, Art. 1, Sec. 9; former LSA-R.S. 15:15, 15:13, 15:13(B), 15:14.
Former LSA-R.S. 15:209 does not give sanction to a new determination for venue as contended by the majority.
The constitutional guarantees must be accorded their proper significance, and the statutes must be considered subservient to and only in fulfillment of them. “Grand jury”, “venue”, “indictment”, and “trial” have deep legal and historical significance and meaning. They cannot be shallowly defined and weighed, and the courts must accord the language its orthodox and literal denotation.
I would return to my original thesis. Under the Constitutions of the United States and Louisiana and under common law an indictment must be found by the grand jury of the county or parish in which the offense was committed unless there is specific statutory modification. Modifications and exceptions such as change of venue must be construed strictly and in the light of the tenor and purpose of the provision and statutes. This court has no authority to extend venue in the absence of absolute and specific statutory or legislative authority.[2] The majority holding would legislate.
If courts are permitted to take such liberties with the clear and never before questioned intendment of our Constitution in regard to indictment by grand jury, the grand jury will be eradicated — if not by our state courts, then by the federal *597 courts. Even if grand juries are archaic, meaningless, and unnecessary (which I do not concede), their demise is for the legislature, and this court should not toll the bells for their “wake”.
The indictment complained of is a nullity, and I respectively dissent.

. This case was tried before the effective date of the new Code of Criminal Procedure.

. State v. Montgomery, 115 La. 155, 38 So. 949 (1905), and State v. Moore, 140 La. 281, 72 So. 965 (1916), held that the State could not extend venue other than by constitutional amendment. State v. Coon, 242 La. 1019, 141 So.2d 350 (1962), is contra; see dissent by Chief Justice Fournet.