[No. 11536. Department Two. June 6, 1914.]

## THE STATE OF WASHINGTON, on the Relation of E. B. Adams, Respondent, v. HARRY GRIMES, as Justice of the Peace etc., Appellant.[1]

JUSTICES OF THE PEACE—PLEADINGS—AMENDMENTS. After change of venue to another justice, such justice has power to allow an amendment of the complaint in any particular, allowing a reasonable time to meet the same.

SAME—JURY TRIAL—DISCHARGE OF JURY—FAILURE TO AGREE. Although not provided for by statute, it is within the general powers of a justice of the peace to discharge a jury in a criminal case, without a loss of jurisdiction, where the jury is unable to agree after deliberation for a reasonable length of time.

SAME—DELIBERATION BY JURY—REASONABLE TIME. Deliberation by a jury in justice court for one hour is a reasonable time, authorizing its discharge, where the jury announced its inability to agree, and the justice upon inquiry finds there is no probability that they will agree.

SAME—TRIAL—CONTINUANCE—JURISDICTION. A justice does not lose jurisdiction by failing to adjourn a criminal trial to a day certain, upon discharging a jury that was unable to agree upon a verdict; and may bring the defendant before him on a second warrant.

Appeal from a judgment of the superior court for Adams county, Holcomb, J., entered February 3, 1912, vacating proceedings before a justice of the peace in a criminal prosecution, on the hearing upon a writ of certiorari. Reversed.

*John Truax*, for appellant.

FULLERTON, J.—This is an appeal by the state of Washington from a judgment of the superior court of Adams county, setting aside and vacating certain proceedings had before a justice of the peace in that county.

On January 26, 1912, one M. H. Quirk filed a complaint before Fred Thiel, one of the justices of the peace in and for Ritzville precinct, in Adams county, charging the relator,

[1]Reported in 141 Pac. 184.

E. B. Adams, with the crime of assault in the third degree, under § 2415 of Rem. & Bal. Code (P. C. 135 § 325). The relator was arrested on a warrant issued on the complaint and brought before the justice, whereupon he filed an affidavit for a change of venue. The change was granted by the justice to another justice of the same precinct, Harry Grimes, and the relator required to appear before such justice on January 29, 1912. On the appearance of the parties before the last named justice pursuant to the order, the prosecuting attorney representing the state discovered that the name of the person assaulted had been misspelled in the complaint, and thereupon, over the objection of the relator, filed a new complaint against him charging him with the same offense. The relator entered a plea of not guilty to the new complaint, and announced that he was ready for trial. The state thereupon demanded a jury, which was duly summoned by the justice. Both parties introduced evidence, and addressed the jury through their counsel, after which the jury retired to consider their verdict. After having deliberated upon the case for something more than an hour, the jury sent word to the justice that they were unable to agree upon a verdict. The justice thereupon called the jury before him, and, after "due and diligent inquiry," satisfied himself that the jury could not agree upon a verdict, and discharged them from further consideration of the cause. The record fails to show what order was entered in the justice's docket at the time of the discharge of the jury. The justice, however, on February 1, 1912, again called the case for trial, and was proceeding therewith, when he was served with a writ of certiorari, issued out of the superior court at the instance of the defendant, staying further proceedings until the writ could be determined. On the hearing of the writ in the superior court, after the return of the justice thereto, the proceedings before the justice were vacated and annulled, on the ground that the justice court had been divested of jurisdiction of the cause, and jurisdiction over the person of the defendant.

The record does not disclose the particular act of the justice of the peace which is thought to have divested his court of jurisdiction over the cause or the person of the defendant, nor have we been favored with an argument on behalf of the defendant. In our consideration of the case, therefore, we shall notice only those questions suggested by the record which seem to us to be debatable, and most likely to have influenced the judge of the superior court when deliberating upon his decision.

The first of these is the act of the justice of the peace in permitting a new complaint to be filed after the cause had reached him on the order for a change of venue. But clearly in doing so he acted within his powers. After the cause had been transferred to his court, he had the same power and authority over the subsequent proceedings as he would have possessed had the proceeding been originally commenced before him. He could allow a new complaint to be filed correcting the old one in any particular, even to allowing a change therein as to the offense charged against the defendant. He must, of course, give the defendant an opportunity to plead to the new complaint, and must allow him a reasonable time, if he demands it, to prepare his defense thereto, before putting him upon his trial, but the record shows that the justice complied with these requirements in the present instance. The defendant was permitted to plead to the complaint, and submitted to an order for trial without suggesting that he was unprepared for trial. There was, therefore, no irregularity or error in the proceeding in this respect, much less such an error as would be subject to review on certiorari, or that would amount to a loss of jurisdiction.

The second possible ground for a loss of jurisdiction is the action of the justice in discharging the jury after he had determined that they could not agree upon a verdict. The statute regulating the practice in justice's courts is strangely silent as to the procedure that shall be followed in a contingency of this kind, and it does, moreover, provide that the

jury, when summoned for the trial of a criminal cause, shall not only determine the guilt or innocence of the defendant, but shall, if it finds him guilty, assess his punishment. But nevertheless we think it within the general powers of a justice of the peace to discharge a jury in a criminal cause when they fail to agree, without a loss of jurisdiction over the cause or over the person of the defendant. The calling of a jury in a justice's court to hear and determine a criminal cause pending therein is not the selection of another or new tribunal to try the cause. The jury bears the same relation to the court of the justice of the peace that it bears to the court when called in a court of general jurisdiction; it becomes, for the time being, a part of the court, and the cause still pends therein after it has performed, or failed to perform, its functions and has departed with leave of the court. If, therefore, for any legal reason, it fails to perform the function for which it is called by disagreeing on the verdict proper to be rendered, it is difficult to see on what principle it deprives the justice of jurisdiction to proceed further. The cause is still pending before the justice, undetermined; there has been a mistrial, and consequently no jeopardy, and since jurisdiction is conferred on the justice for the very purpose of finally determining the cause, it would seem that he had no other duty than to begin the trial anew and proceed to a final determination of the cause. Were the question one of jurisdiction, it would be an answer to say that the law does not so provide. But the question is not one of jurisdiction, but of procedure only; and want of a prescribed procedure does not, as a general rule, deprive a court of carrying out the purposes for which it is created. If a form of procedure is prescribed for it by the power creating it, or by the power having authority to prescribe the procedure, it must, of course, substantially follow such procedure. But when jurisdiction to do a particular thing is alone conferred on a court, the court may adopt any such reasonable and proper procedure as it finds necessary to carry such juris-

diction into effect. This principle is applicable to all courts, when acting within their jurisdiction, whether that jurisdiction be limited or general, and hence is applicable to courts presided over by the justices of the peace.

The next question is, did the court require the jury to deliberate for a sufficient length of time. Our own cases furnish authority for the principle that a trial court may discharge a jury in a criminal case, without prejudicing a further prosecution, when it appears that a reasonable time for deliberation has been allowed and a verdict has not been agreed upon and there is no probability of the jury agreeing upon a verdict. This we held in *State v. Costello*, 29 Wash. 366, 69 Pac. 1099; *State v. Lewis*, 31 Wash. 515, 72 Pac. 121; and *State v. Barnes*, 54 Wash. 493, 103 Pac. 792, 23 L. R. A. (N. S.) 932. But the cases proceed upon the theory—and such unquestionably is the general rule—that a premature discharge of the jury, that is to say, a discharge before it becomes reasonably certain that no agreement can be reached, will prejudice the right of a further prosecution. But while the rule is undoubtedly applicable to a justice's court, we think that the conclusion that the jury is unable to agree is properly reached in a trial in a justice's court after a deliberation for a much shorter time than is permissible in a court of general jurisdiction. Aside from the fact that the issues for trial are usually more simple in the one court than in the other, the law contemplates that the proceedings shall be more summary. The crucial question, moreover, is not how long have the jury deliberated, but is rather, is there a probability of the jury reaching an agreement; and we think that, after jurors in a justice's court have deliberated for more than an hour and have announced to the justice that they are unable to agree, and the justice, after questioning them, reaches the same conclusion, it would be too much to say, as a matter of law, that their discharge was equivalent to an acquittal of the defendant.

Did the justice lose jurisdiction of the cause by failing to continue it to a day certain after the discharge of the jury? The statute does not so provide, and we see no substantial reason for so holding. He may lose jurisdiction over the person of the defendant if he lets him go without day, but the cause itself is still pending before him, and he may require the defendant to be brought before him on a second warrant.

The judgment appealed from is reversed, and the cause remanded with instructions to quash the writ of certiorari and dismiss the application therefor.

CROW, C. J., PARKER, MORRIS, and MOUNT, JJ., concur.