[No. 20831.    Department Two.    December 6, 1927.]

THE STATE OF WASHINGTON, *Respondent,* v. CARL F. NELSON, *Appellant.*[1]

[1] STATUTES (13)—SUBJECTS AND TITLES—ACTS RELATING TO ONE OR MORE SUBJECTS.  The legislature could, in the "Game Code" (Rem. 1927 Sup., § 5931-1 *et seq.*), include in one general enactment all the statutory law relating to the subject of game, including provisions regulating the sale and disposition of game, searches, and penalties without violating the state constitution prohibiting an act containing more than one subject.

[2] CONSTITUTIONAL LAW (126)—DUE PROCESS OF LAW—DEPRIVATION OF PROPERTY.  The provision of the game code authorizing the confiscation of game found in the possession of persons holding the same without compliance with the regulations provided by law is not unconstitutional as permitting the taking of property without due process of law.

[3] FISH (4, 5)—POWER TO PROTECT AND REGULATE—STATUTORY PROVISIONS.  The power of the state to regulate the sale and disposition of game in this state extends to game lawfully acquired without, and brought into, this state, when reasonable for the protection of game in the state; and it is not unreasonable to require such game to be reported and tagged before being offered for sale in this state.

[4] CONSTITUTIONAL LAW (100) — GRANTS OF SPECIAL PRIVILEGES — PROTECTION OF FISH.  The provision in the game code for licenses to destroy game for scientific and propagation purposes, at times when prohibited for other purposes, is not unconstitutional as granting special privileges.

[1]Reported in 261 Pac. 796.

[5] SAME (32)—LEGISLATIVE POWER—DELEGATION—STATE FISHERIES BOARD. It is not an unlawful delegation of legislative power to authorize the state fisheries board to promulgate rules and regulations governing the taking of food fishes and their sale in this state.

[6] STATUTES (9)—PARTIAL INVALIDITY—EFFECT. If Rem. 1927 Sup., § 5931-21, authorizing officers to search, without warrant, certain places for evidence of violation of the game laws, be unconstitutional, it does not affect the balance of the game code, or the provisions requiring game, lawfully acquired without, and brought into, the state, to be reported and tagged before being offered for sale.

[7] CONSTITUTIONAL LAW (134)—DUE PROCESS OF LAW—REGULATION OF TRADE OR BUSINESS. The proviso to Rem. 1927 Sup., § 5931-95, to the effect that game taken without, and brought into, the state, shall be reported and tagged, for which the officers may charge and collect a fee, does not violate the constitutional inhibition against the taking of property without due process of law.

[8] COMMERCE (1)—POWERS TO REGULATE REMAINING IN STATES. The proviso to Rem. 1927 Sup., § 5931-95, to the effect that game taken without, and brought into, the state, shall be reported and tagged, for which the officers may charge and collect a fee, does not violate the interstate commerce clause of the Federal constitution.

[9] INDICTMENT AND INFORMATION (88)—AMENDMENT—AFTER APPEAL FROM JUSTICE OF PEACE. After an appeal from a conviction in the justice court, it is proper to allow the state to file a new information.

[10] FISH (19) — CRIMINAL PROSECUTIONS — INFORMATION — SUFFICIENCY. An information for violation of the game code is sufficient when it states a violation of the proviso to Rem. 1927 Sup., § 5931-95, intended to forbid the sale and disposition of game fish, lawfully acquired without the state, without first giving notice and having the same tagged for identification.

[11] CRIMINAL LAW (124) — EVIDENCE — COMPETENCY — ARTICLES TAKEN FROM ACCUSED—SEARCHES. Where fish was seized without a search warrant, it is proper to deny a motion to suppress it as evidence of a violation of the game laws, where the fish was openly exposed for unlawful sale and required no search to disclose it.

[12] CONSTITUTIONAL LAW (39)—JUDICIAL POWERS—ENCROACHMENT ON LEGISLATURE—POLICY OF ACT. The courts will not inquire into the wisdom or policy of an act, when the legislature has acted within its constitutional powers.

Appeal from a judgment of the superior court for Spokane county, Leavy, J., entered May 16, 1927, upon a trial and conviction of violation of the game laws. Affirmed.

*Neil C. Bardsley,* for appellant.

*Chas. W. Greenough* and *Ferd. J. Schaaf,* for respondent.

FULLERTON, J.—Carl F. Nelson was convicted of a violation of the game code (Laws of 1925 [Ex. Sess.], p. 494; Rem. 1927 Sup., § 5931-1 *et seq.*) of the state, and appeals from the judgment and sentence pronounced upon him.

The facts of the case are stipulated. It appears that the appellant is the agent and servant of a corporation engaged, as a part of its business, in buying and selling, at wholesale and retail, trout and other varieties of food fish. The corporation holds a license, issued by public authority, "to handle or deal in trout or other food fish secured from private hatcheries." In February, 1927, the corporation purchased from a private hatchery, located in the state of Montana, a box of trout, caused the same to be brought into this state to its place of business, and there offered the fish for sale to its patrons and customers in the usual course of trade. It did not, prior to offering the fish for sale, report in writing to the supervisor of game and game fish, or to the county game commission of the county in which they were offered for sale, the receipt of the fish, so that they might be tagged or otherwise marked for identification by some one of the officers named.

The appellant was found in charge of the business of the corporation by a deputy game warden, and was taken by that officer before a justice of the peace, where he was charged with a violation of the statute

before referred to, and convicted and fined. From the judgment of conviction, he appealed to the superior court, where the prosecuting attorney filed an information against him. It was a conviction upon the information that gives rise to the present appeal.

The appellant attacks the act under which the appellant was convicted, contending that it is in violation of both the state and the federal constitutions. It is argued that it violates the state constitution, in that it contains more than one subject; authorizes the taking of property without due process of law; grants special privileges; delegates judicial, legislative and administrative powers to inferior boards and commissions; provides for unreasonable searches and seizures; and that it violates the federal constitution in that it authorizes the taking of property without due process of law and in that it interferes with interstate commerce. While these objections appear somewhat formidable upon their face, we do not feel that they require extended discussion.

[1] Concerning the first objection, it is to be noticed that the act contains no unusual features. It relates wholly to game animals, game birds, and game fishes, and provides for their protection and propagation. It is but an attempt on the part of the legislature to include in one general enactment all of the statutory law relating to a cognate subject. That the legislature may do this without violating the constitutional provision forbidding the inclusion in one act of more than one subject is generally held. Any rule that would forbid it would not only be contrary to the spirit of the constitutional provision, but would seriously embarrass the legislature.

[2] The contention that the act permits the taking of property without due process of law is founded on the fact that it provides for the confiscation under

certain circumstances of game animals, game birds, and game fish found in the possession of persons who hold them without complying with the regulations provided by the law. But the regulation in this respect is but a means to an end. It is a regulation deemed necessary by the legislature for the protection of game. The regulation is within the constitutional powers of the legislature. The game within the state belongs to the people of the state, and the legislature may prohibit absolutely its destruction, possession, or taking, if it so chooses. Having this power, it may regulate its destruction, possession, or taking in any manner short of absolute prohibition.

[3] The appellant, however, seems to contend further that, while the legislature may have this power with respect to the game of the state, it does not have such power with respect to game lawfully acquired without the state and brought within the state. But if this be his meaning, the contention is unsound. For the protection of its own property, the state may regulate the possession and disposition of property of like kind when brought within the state from another jurisdiction. If there be a limitation at all upon its powers in this respect, it is only that the regulation be reasonable, and we find nothing unreasonable in the regulation it has adopted.

[4] The claim that the act grants special privileges is founded on the fact that it permits the taking and destruction of game for scientific and propagation purposes at a season of the year in which its taking and destruction are forbidden for the purposes of sport or food. But we see nothing incongruous in this. The one tends to the protection and increase of game, while the other has the directly opposing effect. Surely, the legislature can make a distinction in this respect without violating any constitutional provision.

[5] The question whether the act confers judicial and legislative powers on boards and commissions was met and determined, in effect, by this court, contrary to the appellant's contention, in *Vail v. Seaborg,* 120 Wash. 126, 207 Pac. 15, where the principle involved was argued at length, and the supporting cases cited and reviewed. Since we adhere to the conclusion there reached, it controls the question here presented.

[6] The contention that the act provides for unreasonable searches and seizures is founded on the provisions of § 21 of the act (Laws of 1925 [Ex. Sess.], p. 505; Rem. 1927 Sup., § 5931-21). That section purports to empower the supervisor of game and fish, game wardens and police officers generally to search without warrant certain designated places which the officer may have reason to believe contain evidence of a violation of the act. It may be that some of the powers here attempted to be conferred are in violation of the search and seizure clause of the constitution, but the immediate question is not before us, since the present cause does not involve the provisions of the particular section.

The larger question is, do the provisions of this section, conceding that they are violative of the constitution, render the whole act unconstitutional. It is not our opinion that they do. They relate solely to means for the enforcement of the act. The searches provided for are not in themselves objectionable, and are only so in so far as they are authorized to be made "without warrant." The act is complete and workable without this included power, and it is not to be supposed that the legislature intended to make the entire act hinge upon it.

"The general proposition must be conceded, that in a statute which contains invalid or unconstitutional provisions, that which is unaffected by these provisions, or which can stand without them, must remain.

If the valid and invalid are capable of separation, only the latter are to be disregarded." *Pullman State Bank v. Manring,* 18 Wash. 250, 51 Pac. 464.

[7] The act provides that it shall be lawful at all times for any person, firm or corporation to have in its possession game fish lawfully taken outside of the boundaries of the state, for the purpose of disposing of the fish in the usual course of trade;

"Provided always, that the same have been, within three days after their receipt, reported in writing to the supervisor of game and fish, or the game commission of the county wherein the same is to be kept or used as herein specified. The supervisor of game and game fish or the county game commission shall cause the same to be tagged or marked for identification and shall be authorized to charge and collect . . . " a fee therefor. (Rem. 1927 Sup., § 5931-95.)

It is the proviso clause quoted which the appellant contends violates the due process of law and interstate commerce clauses of the Federal constitution. The argument by which the proposition is sought to be sustained need not be followed. A provision, in its substance the same in the game code of the state of New York, was before the supreme court of the United States in *Silz v. Hesterberg,* 211 U. S. 31, wherein it was held not to be a violation of either of these clauses of the Federal constitution. Arguing that the act was not in violation of the due process of law clause, the court used this language:

"As to the first contention, that the laws in question are void within the meaning of the Fourteenth Amendment because they do not constitute due process of law. The acts in question were passed in the exercise of the police power of the State with a clear view to protect the game supply for the use of the inhabitants of the State. It is not disputed that this is a well-recognized and often-exerted power of the State and necessary to the protection of the supply of game which would otherwise be rapidly depleted, and which,

in spite of laws passed for its protection, is rapidly disappearing from many portions of the country. . . . It is contended, in this connection, that the protection of the game of the State does not require that a penalty be imposed for the possession out of season of imported game of the kind held by the relator. It is insisted that a method of inspection can be established which will distinguish the imported game from that of the domestic variety, and prevent confusion in its handling and selling. That such game can be distinguished from domestic game has been disclosed in the record in this case, and it may be that such inspection laws would be all that would be required for the protection of domestic game. But, subject to constitutional limitations, the legislature of the State is authorized to pass measures for the protection of the people of the State in the exercise of the police power, and is itself the judge of the necessity or expediency of the means adopted. In order to protect local game during the closed season it has been found expedient to make possession of all such game during that time, whether taken within or without the State, a misdemeanor. In other States of the Union such laws have been deemed essential, and have been sustained by the courts. *Roth v. State,* 51 Ohio St. 209; *Ex parte Maier,* 103 California 476; *Stevens v. The State,* 89 Maryland 669; *Magner v. The People,* 97 Illinois 320. It has been provided that the possession of certain kinds of game during the closed season shall be prohibited, owing to the possibility that dealers in game may sell birds of the domestic kind under the claim that they were taken in another State or country. The object of such laws is not to affect the legality of the taking of game in other States, but to protect the local game in the interest of the food supply of the people of the State. We cannot say that such purpose, frequently recognized and acted upon, is an abuse of the police power of the State, and as such to be declared void because contrary to the Fourteenth Amendment of the Constitution.''

[8] On the question whether the act violates the interstate commerce clause of the constitution, the court said:

"It is next contended that the law is an attempt to unlawfully regulate foreign commerce which, by the Constitution of the United States, is placed wholly within the control of the Federal Congress. That a State may not pass laws directly regulating foreign or interstate commerce has frequently been held in the decisions of this court. But while this is true, it has also been held in repeated instances that laws passed by the States in the exertion of their police power, not in conflict with laws of Congress upon the same subject, and indirectly or remotely affecting interstate commerce, are nevertheless valid laws. *M., K. & T. Ry. Co. v. Haber,* 169 U. S. 613; *Pennsylvania Co. v. Hughes,* 191 U. S. 477; *Asbell v. Kansas,* 209 U. S. 251."

Our conclusion is that the act in question violates neither the state nor Federal constitutions.

[9]  The appellant next complains because the trial court permitted the state to file a new information against him after the appeal of the cause to that court. This was not error. The court but followed the rule as we have heretofore announced it. *State v. Bringgold,* 40 Wash. 12, 82 Pac. 132, 5 Ann. Cas. 716; *State v. Hamshaw,* 61 Wash. 390, 112 Pac. 379; *State ex rel. Adams v. Grimes,* 80 Wash. 14, 141 Pac. 184; *State v. Bryant,* 90 Wash. 20, 155 Pac. 420.

[10]  The next contention is that the information filed in the superior court does not state facts sufficient to constitute a crime. The particular section of the statute on which the information is founded we have outlined in our discussion of the Federal constitutional question above noticed. It will be observed that the proviso to the main part of the text is not very happily worded, but we think its meaning clear. It was intended to forbid the sale and disposition of game fish, even though lawfully acquired, without first notifying either the supervisor of game and fish, or the game commission of the county wherein the fish are

offered for sale, of the intended sale or disposition, so that the same could be tagged or otherwise marked for identification. The information, especially when read in the light of the stipulated facts, states a violation of this clause of the statute.

[11] It is next complained that the trial court erred in denying the appellant's motion to suppress evidence. Since the appellant stipulated the facts, and expressly waived a jury trial, it would seem that this question was not now of very great moment, but, nevertheless, no error was committed in denying the motion to suppress. The statute expressly authorizes game wardens to seize, without warrant, game animals, game birds, and game fish, which they find in the unlawful possession of another. The fish were so seized in this instance, so that the real question is whether the method of seizure was lawful. But, if we were to concede that the legislature may not authorize a seizure without warrant of contraband articles of property, where such seizure must be preceded by an unlawful search, the present instance does not present a situation for the operation of the rule. No search was here necessary to find the property. The property was not concealed. The appellant was exposing it for sale at his place of business, inviting every member of the public to inspect it. Under the rule announced in *State v. Llewellyn,* 119 Wash. 306, 205 Pac. 394, and *State v. Miller,* 121 Wash. 153, 209 Pac. 9, the seizure was lawful, and the seized articles properly admissible in evidence.

[12] Finally, the appellant indulges in an argument attacking the wisdom and policy of the statute. But these are not questions for the consideration of the courts. They are legislative questions, and it is to the legislature that such arguments must be directed. It is enough here to say that, upon all rightful subjects

of legislation, the enactments of that body, when it acts within its constitutional powers, are supreme, and to them the courts, as well as the individuals affected, must bow, however much it may be believed that a different policy would be more wise and just.

The judgment is affirmed.

MACKINTOSH, C. J., MAIN, ASKREN, and FRENCH, JJ., concur.