211 So.2d 650 (1968)
252 La. 564
STATE of Louisiana
v.
Russell ALEXANDER.
No. 48853.
Supreme Court of Louisiana.
March 25, 1968.
Dissenting Opinion April 3, 1968.
Dissenting Opinion April 15, 1968.
Concurring Opinion on Denial of Rehearing May 9, 1968.
*651 Marion W. Groner, New Iberia, Paul S. Daspit, Jr., Stephen Boulet, St. Martinville, for defendant-appellant.
Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Knowles M. Tucker, Dist. Atty., Leon E. Roy, Jr., Asst. Dist. Atty., for appellee.
SANDERS, Justice.
The Grand Jury of St. Martin Parish indicted Russell Alexander for the murder of Mrs. Aline Bulliard Carter. Upon arraignment, he pleaded not guilty and the court fixed a time for filing pleas and motions. The defendant filed motions to quash the indictment and for a change of venue, based upon the allegation that widespread prejudice existed against him in St. Martin Parish. After hearing, the trial judge took the motion to quash "under advisement" but granted a change of venue to St. Mary Parish in the same judicial district. Several months later, acting in the St. Mary Parish proceeding, the trial judge[1] quashed the indictment.
*652 The defendant was then reindicted by the Grand Jury of St. Mary Parish for the same offense. After trial, the jury returned a verdict of guilty. The defendant filed a motion in arrest of judgment based upon the ground that the indictment returned by the St. Mary Parish Grand Jury was void. After overruling the motion, the court sentenced the defendant to death. The defendant has appealed, relying upon seven bills of exceptions reserved in the trial court.
On August 27, 1965, Mrs. Aline Bulliard Carter was missing from her home at St. Martinville, Louisiana. The Sheriff and his deputies found the house in disarray with blood stains on the floor. Suspicion attached to a 24-year-old Negro, Russell Alexander, a sexual deviate of low mentality. After being interrogated by the police officers in the presence of his mother, he admitted he killed Mrs. Carter with a hammer at her home and disposed of her body. He then led the officers to the body.

Bill of Exceptions No. 1
The defendant reserved Bill of Exceptions No. 1 to the introduction in evidence of his written confession. Defendant contends the confession was involuntary because of physical mistreatment, consisting of beating and denial of food, a promise by Deputy Sheriff Roy Bonvillain to "help" the defendant, and an exhortation to defendant by his mother to tell the truth.
To render a confession admissible in a criminal prosecution, the burden is upon the state to prove beyond a reasonable doubt that it was free and voluntary. State v. Ragsdale, 249 La. 420, 187 So.2d 427, cert. denied 385 U.S. 1029, 87 S.Ct. 758, 17 L.Ed.2d 676; State v. Scott, 243 La. 1, 141 So.2d 389.
The trial judge analyzed the evidence relating to the confession and concluded defendant's charges of physical mistreatment and coercion were unfounded and the state had satisfied the burden of proof. We agree with the findings of the trial judge.
It is true defendant's mother exhorted him to tell the truth prior to his confession. She was present while the Deputy Bonvillain talked to her son. The evidence, however, refutes any suggestion of intimidation or coercion. Under the circumstances, the mother's exhortation does not render the confession involuntary. See State v. McAllister, 244 La. 42, 150 So.2d 557, cert. denied 375 U.S. 260, 84 S.Ct. 362, 11 L.Ed.2d 311; and State v. Bueche, 243 La. 160, 142 So.2d 381.
In this Court, the defendant also contends the confession is inadmissible because of the officers' failure to give defendant the fourfold warning required by Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, decided by the Supreme Court of the United States on June 13, 1966. The Bill of Exceptions makes no mention of the lack of warning. But assuming that the issue is raised by the general averments, we find the contention lacks merit.
Trial of the present case began on March 14, 1966, before the Miranda decision. Hence, since the holding is not retroactive, it is unavailable to the defendant. See Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882; State v. Johnson, 249 La. 950, 192 So.2d 135, cert. denied 388 U.S. 923, 87 S.Ct. 2144, 18 L.Ed.2d 1374; and State v. Evans, 249 La. 861, 192 So.2d 103, cert. denied 389 U.S. 887, 88 S.Ct. 110, 19 L.Ed.2d 187.
The evidence reflects, however, that before defendant made his written confession he was advised that he had a right to remain silent, that anything he said would be used against him, and that he was entitled to a lawyer.
We conclude the Bill of Exceptions is without merit.

*653 Bills of Exceptions Nos. 2, 3, 4, and 5

Defendant reserved these four Bills to the introduction into evidence of a hammer, several articles of women's clothing, pieces of telephone wire, and two photographs of the body of the deceased. Defendant objected to this evidence on the ground it was irrelevant and tended to inflame the minds of the jurors.
During the investigation, defendant told the officers he struck the victim with a hammer and disposed of the hammer near the place he had left the body. The officers found the hammer at this location.
The garments bearing blood stains were also found near the victim's body. Garments of this type were missing from the body.
Defendant stated he cut the telephone wires at the home of the victim when she attempted to call for help. The State introduced two pieces of the wire in evidence.
The hammer, garments, and wires were relevant. The defendant allegedly used the hammer to strike the fatal blows. Each of the other objects was closely connected with the crime. The State laid a sufficient foundation for the introduction of the objects. The jury, of course, determined the weight to be accorded to them.
The photographs are also relevant. They tended to establish the death and identity of the victim. Additionally, they tended to corroborate other evidence that the killing occurred in the perpetration of of aggravated rape for application of the felony-murder doctrine, as defined in LSA-R.S. 14:30, on which the indictment was founded.
In State v. Morris, 245 La. 475, 157 So.2d 728, we summarized the law relating to the use of photographs as follows:
"[W]e have on numerous occasions stated that the mere fact that photographs are gruesome and tend to prejudice the jury does not render them inadmissible in evidence if they are otherwise admissible. See State v. Johnson, 198 La. 195, 3 So.2d 556, State v. Ross, 217 La. 837, 47 So.2d 559, State v. Solomon, 222 La. 269, 62 So.2d 481, State v. Eubanks, 240 La. 552, 124 So.2d 543, and State v. Collins, 242 La. 704, 138 So.2d 546. We think, however, that this rule is subject to the reservation noted in the vast majority of the common law jurisdictions and expressed in 23 C.J.S. 353, verbo Criminal Law § 852 (1) c: "As a general rule, where photographs are otherwise properly admitted, it is not a valid objection to their admissibility that they tend to prejudice the jury. Ordinarily photographs are not inadmissible merely because they bring vividly to jurors the details of a shocking crime or tend to arouse passion or prejudice, as in the case of unpleasant, gruesome, or horrifying photographs. The test of admissibility in such cases is whether the probative value of the photographs outweighs their probable prejudicial effect. Accordingly, photographs should be excluded where their logical relevancy will unquestionably be overwhelmed by the inherently prejudicial nature of the particular picture; and photographs which are calculated to arouse the sympathies or prejudices of the jury are properly excluded if they are entirely irrelevant or not substantially necessary to show material facts or conditions."
We have examined the photographs. Although any photograph of human death is unpleasant and revolting, the present photographs are not unduly gruesome. As pointed out by the trial judge, the camera distance was such as to minimize the gruesome aspects of the scene. Applying the test laid down in the foregoing decision, we conclude the probative value of the photographs greatly outweighs any probable prejudicial effect.
The Bills of Exceptions lack merit.

*654 Bill of Exceptions No. 6

The defendant reserved Bill of Exceptions No. 6 after the trial judge ruled that defense witness Frank W. Krevanick, an unlicensed practicing psychologist, was unqualified to testify as an expert as to the sanity of the defendant at the time of the crime. The court permitted the witness to testify concerning the psychological tests he had given the defendant and to other facts within his special competence.
LSA-R.S. 15:466 provides:
"The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court."
The competency of an expert is a question of fact. The trial judge has wide discretion in passing upon the qualifications of such a witness. On appeal, his ruling will not be disturbed in the absence of manifest error. State v. Smith, 231 La. 649, 92 So.2d 569; State v. Mills, 229 La. 758, 86 So.2d 895, cert. denied Vernaci v. State of Louisiana, 352 U.S. 834, 77 S.Ct. 51, 1 L.Ed.2d 53; State v. Dowdy, 217 La. 773, 47 So.2d 496; State v. Carter, 217 La. 547, 46 So.2d 897.
The witness possessed no qualification as a psychiatrist. Under the circumstances shown, we find no manifest error in the ruling of the trial judge.

Bill of Exceptions No. 7
Defendant reserved Bill of Exceptions No. 7 to the overruling of his motion in arrest of judgment based upon the nullity of the indictment by the Grand Jury of St. Mary Parish. The defendant contends that, despite the change of venue, the St. Mary Parish Grand Jury had no jurisdiction to indict for the offense committed in the adjoining parish. Defense counsel reason that, upon the quashing of the indictment, the order changing venue became moot, divesting St. Mary Parish of jurisdiction of the case.
The record reflects the trial judge quashed the indictment after the change of venue.[2] Hence, the precise question presented is whether the Grand Jury of the parish to which the venue of a criminal prosecution has been changed may return a corrective indictment for the same offense, when the court quashes the indictment after the change of venue. The question is res nova in Louisiana. The authorities elsewhere are divided on the question. See State ex rel. Adams v. Grimes, 80 Wash. 14, 141 P. 184; Watkins v. United States, 3 Ind.T. 281, 54 S.W. 819; Kelley v. Commonwealth, 189 Ky. 778, 225 S.W. 739; Gonzalis v. Lynch, Okl.Cr., 282 P.2d 255; Joyce on Indictments, § 121, pp. 146-148 (2d ed. 1924); 16 C.J., Criminal Law, § 335, p. 220; 22 C.J.S. Criminal Law § 217 pp. 564-568; 21 Am.Jur.2d, Criminal Law, § 434, p. 439; and Annotation, 18 A.L.R. 715.
A resolution of the question in Louisiana depends upon the construction of pertinent constitutional and codal provisions.
Article I, Section 9 of the Louisiana Constitution provides that no person shall be held to answer for capital crime except on a presentment or indictment of a grand jury. The Constitution, however, designates no specific grand jury to return a corrective indictment after a change of venue.
Concerning the authority of the grand jury, former LSA-R.S. 15:209, at the time of the trial, provided:
"The grand jury shall inquire into all crimes punishable with capital punishment *655 and into all other crimes triable within the parish, when their attention has been directed to the subject of such crime either by instructions from the court or at the instance of the district attorney, and the grand jury ought to find an indictment in every case submitted to them in which, in their judgment, the evidence before them, if unexplained and uncontradicted, would warrant a conviction." (Italics ours.)
To the same effect, see LSA-C.Cr.P. Article 437 (1967).
Concerning the change of venue, former LSA-R.S. 15:296 provided:
"The clerk of the court to which any cause shall have been thus removed shall, on receipt of the indictment and other papers, enter the cause upon the docket of his court; and it shall be heard, tried and determined in the same manner as if the proceedings had originally been instituted therein." (Italics ours.)
To the same effect, see LSA-C.Cr.P. Article 623 and 624 (1967).
Hence, a grand jury has the authority to indict if a capital offense is "triable within the parish." Upon a change of venue, the case is removed, or transferred, to another parish. The code article vests the court of that parish with the authority to proceed "in the same manner as if the proceedings had originally been instituted therein." The grant of authority is extremely broad. It is sufficient, in our opinion, to make the offense triable in the transferee parish within the intendment of the law defining the grand jury's authority. Hence, the Grand Jury of that parish may return a corrective indictment, when the original indictment is quashed after a change of venue.
We conclude, then, that the Grand Jury of St. Mary Parish properly reindicted the defendant.
The question as to whether the Grand Jury of St. Martin Parish, the parish of origin, could have reindicted the defendant is not before us. Hence, we express no opinion as to this question.
The Bill of Exceptions is without merit.
For the reasons assigned, the conviction and sentence are affirmed.
McCALEB and BARHAM, JJ., and FOURNET, C. J., dissent with written reasons.
McCALEB, Justice (dissenting).
Inasmuch as I believe the indictment of appellant by the grand jury of St. Mary Parish to be a nullity, I do not reach the other bills relied on for a reversal of the conviction. I think it fundamental that one accused of crime in Louisiana must be indicted or informed against by the grand jury or the prosecuting officer of the parish in which the crime was committed. Section 9 of Article I of our Constitution provides, inter alia, "that all trials shall take place in the parish in which the offense was committed, unless the venue be changed;". Since the indictment is the foundation of the prosecution for crime, it is implicit in this constitutional provision that all indictments or bills of information be returned or filed in the court of the parish in which the crime was committed.
The majority view, that whenever venue of a criminal trial is changed and the prosecution is dismissed or terminated other than on the merits, a second prosecution against the accused for the same offense may be originated in the parish to which venue of the trial has been changed, is contrary to rudimentary principles of criminal procedure and does not conform with the above quoted provision of our Bill of Rights. For it overlooks the fact that the accused is entitled to be indicted by a grand jury of his peers selected without discrimination from the parish in which the crime was committed as the letter of the Constitution patently contemplates. See State v. Briwa, 198 La. 970, 5 So.2d 304, and *656 cases there cited. This right may not be altered or revoked by the circumstance that the venue is subsequently changed to another parish in the absence of a statute authorizing such procedure. Surely, the language of Articles 209 and 296 of the 1928 Code of Criminal Procedure (R.S. 15:209 and 15:296) cannot be stretched so as to provide such authority, as the majority opinion seeks to do.
While it may be true that there is diverse authority from other jurisdictions on this question, I find no basis under our Constitution and laws for deviation from the fundamental concept that an indictment charging crime must be returned in the parish where the crime was committed. Indeed, as succinctly stated in 27 Am.Jur., Indictments and Informations, Sec. 12, p. 595, "It is the universal rule, both at common law and under the Constitutions and statutes, in the absence of some statutory modification, that an indictment must be found by the grand jury of the county or district in which the offense was committed, although from a very early period many statutory exceptions to the general rule existed."
I respectfuly dissent.
BARHAM, Justice (dissenting).
I cannot agree with the reasoning and the conclusion of the majority in regard to Bill of Exception No. 7.
Mrs. Aline Bulliard Carter was killed in St. Martin Parish, and Russell Alexander was indicted by the grand jury of that parish for her murder. He pleaded not guilty when arraigned, and in compliance with the court order for the filing of all pleas and motions and in conformity with Louisiana practice he filed simultaneous motions to quash the indictment and for a change of venue. The Sixteenth Judicial District Court for St. Martin Parish took the motion to quash "under advisement", and on October 15, 1965, acted upon the motion for a change of venue by granting a change of venue to St. Mary Parish, which is in the same judicial district. The minutes of the Sixteenth Judicial District Court for St. Mary Parish reflect that the indictment was quashed on December 7, 1965. On December 10, 1965, the grand jury for St. Mary Parish indicted the defendant for the murder of Mrs. Aline Bulliard Carter which had occurred in St. Martin Parish.
Bill of Exception No. 7 was reserved to the overruling of the defendant's motion in arrest of judgment, based upon the nullity of the indictment returned by the grand jury of St. Mary Parish which charged the defendant with murder in St. Martin Parish. Under this indictment the defendant was tried in St. Mary Parish, found guilty, and sentenced to death.
The grand jury system is a product of the common law, and provisions for it in Louisiana are patterned after common law and have no source in civil law authorities. Therefore interpretations of the rights and responsibilities of the grand jury must be sought under common law as well as Louisiana law and jurisprudence.
The grand jury function is twofold: To return indictments to bring an accused to trial, and to protect the citizens from unfounded accusations whether from the goverment or partisan passion or private enmity. Hurtado v. People of State of California, 110 U.S. 516, 4 S.Ct. 111, 292, 28 L.Ed. 232 (1884); 24 Am.Jur., Grand Jury § 3. English common law theorized:
"* * * no man can be convicted at the suit of the king of any capital offense, unless by unanimous voice of twenty-four of his equals and neighbors: That is, by twelve at least of the grand jury, in the first place, assenting to the accusation, and afterwards by the whole petit jury of twelve more finding him guilty upon his trial. * * *" 4 Bl. Com. 306. (Italics here and elsewhere have been supplied.)
The tradition of the grand jury is incorporated into the Fifth Amendment of *657 the United States Constitution, which reads:
"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury * * *."
Article 1, Section 9, of the Louisiana Constitution provides:
"In all criminal prosecutions the accused shall have the right to a speedy public trial by an impartial jury; * * * all trials shall take place in the parish in which the offense was committed, unless the venue be changed; * * * provided, that no person shall be held to answer for a capital crime unless on a presentment or indictment by a grand jury * * *."
It is provided by Article 7, Section 42, of the Louisiana Constitution:
"A grand jury of twelve, nine of whom shall constitute a quorum and must concur to find an indictment, shall be empanelled in each parish twice in each year * * *."
These constitutional provisions secure to one accused of a capital crime, first, the right to have the charge preferred by indictment before he can be tried, and second, the right after indictment to a speedy public trial by an impartial jury.
"An indictment is an accusation at the suit of the king, (or state,) by the oaths of twelve men, (at the least, and not more than twenty-three,) of the same county wherein the offense was committed, returned to inquire of all offenses in general in the county, determinable by the court in which they are returned, and finding a bill brought before them to be true." 5 Bacon Abridgement 48.
"Every indictment is to be found by twelve lawful, liege freeman of the county where the crime was committed, returned by the proper officer." 5 Bacon Abridgement 52.
"It seems to be generally agreed at this day that by the common law no grand jury can indict any offense whatsoever which doth not arise within the limits of the precincts for which they are returned." 2 Hawkins' Pleas of the Crown, Sec. 34, p. 313.
"According to common law doctrine all crimes are local. In other words, the prosecution for them can be carried on only in the county of their commission. A grand jury cannot inquire concerning them except within such county." 1 Bish. Cr.Proc. § 65.
Clear and exacting mandates are set forth for the proceedings in criminal prosecutions. While changes and modifications in the proceedings have occurred and do occur, these changes must come within the framework of the constitutional provisions and by express legislative enactments. Thus the change of venue provisions must be construed under constitutional authority and compatably with other provisions of the law. They must be construed strictly with cognizance and perception of the purpose for which they were intended, i. e., "to obtain an impartial trial". Former LSA-R.S. 15:292, 15:293.[1]
The uniform and controlling law applicable to the case before this court is succinctly stated in 4 Wharton's Criminal Law and Procedure, sec. 1729, p. 515 (Anderson ed. 1957):
"Both at common law and under the constitutions and statutes, in the absence of some statutory modification, an indictment must be found by the grand jury of the county or district in which the offense was committed, although from a very early period many statutory exceptions to the general rule have existed." See also 21 Am.Jur.2d Criminal Law § 383 and 399.
*658 Under common law, constitutional authority, and statutory provision, the grand jury of the county (or the parish) where the crime was committed has the sole right to bring in an indictment; and a change of venue for the purpose of grand jury action is not allowed. Former LSA-R.S. 15:291 provided:
"No change of venue shall be awarded until the accused shall have been arraigned and shall have pleaded `not guilty'."
The creators of Louisiana law and jurisprudence never envisioned that an indictment could be returned in any locality other than the parish in which the offense is alleged to have been committed except by specific constitutional or statutory allowance. A constitutional exception is afforded in Article 1, Section 9:
"* * * provided further, that the Legislature may provide for the venue and prosecution of offenses committed within one hundred feet of the boundary line of a parish. * * *"
This exception was previously authorized by a statute which this court held unconstitutional in State v. Montgomery, 115 La. 155, 38 So. 949 (1905). Thereafter it was incorporated into the Constitution. See also State v. Moore, 140 La. 281, 72 So. 965 (1916). For statutory authority in Louisiana which established venue in a parish other than where the offense was "committed", see former LSA-R.S. 15:13, 15:14, and 15:15. See also State v. Coon, 242 La. 1019, 141 So.2d 350 (1962).
The majority opinion states our issue:
"The record reflects the trial judge quashed the indictment after the change of venue. Hence, the precise question presented is whether the Grand Jury of the parish to which the venue of a criminal prosecution has been changed may return a corrective indictment for the same offense, when the court quashes the indictment after the change of venue. The question is res nova in Louisiana. The authorities elsewhere are divided on the question."
The majority has posed the issue correctly, but the last statement quoted is erroneous, for the authorities cited thereafter are not supportive of the statement. One may say that a division on the question has been created by the conclusions and opinions expressed in the legal commentaries in an attempt to interpret the jurisprudence, but there is no division of the jurisprudence on this subject.
Joyce on Indictments, sec. 121, p. 146 (2d ed. 1924), and 18 A.L.R. 715 (1922), cited by the majority, do state that there is a conflict of authority as to where a new indictment should be procured after a case is removed from the county where the crime was committed on a motion for change of venue. Their statement that there is authority for the return of a new indictment for the same offense by the grand jury of the county to which the trial was transferred cites only one case, Watkins v. United States, 3 Ind.T. 281, 54 S.W. 819 (1900).
Watkins v. United States has been misquoted, misinterpreted, and misused by the commentaries for 67 years. The case was on appeal from the United States court for the Southern District of the Indian Territory. Special federal statute provided:
"* * * the Southern district [Indian territory] shall consist of all the Chickasaw country, and the places for holding court in said district shall be at Ardmore, Purcell, Pauls Valley, Ryan and Chickasha." (p. 820) Act of March 1, 1895, sec. 1 (28 Stat. 694; Ind.T.Ann.St.1899, sec. 45).
The same statute, Section 7 (51), provided:
"* * * that all prosecutions for crimes and offences of which the United States court in the Indian Territory shall have jurisdiction, shall be had within the district in which said offence shall have been committed, and in the court nearest or most convenient to the *659 locality wherein it is committed, to be determined by the judge on motion to transfer the trial of the case from one court to another. * * *" (p. 820)
The court finally concluded:
"* * * But, if this were not true, by virtue of the statute of 1895 (Ind.T. Ann.St.1899), supra, in this jurisdiction an indictment found by any of the courts of the district, although not the nearest or most convenient to the locality where the offense was committed, would be a valid indictment; for in such case the statute declares that the place of trial shall be determined by the judge `on motion to transfer the trial of the case from one court to another'." (p. 821)
In obiter dictum the court had previously stated:
"* * * Where a change of venue is taken from one court to another, the latter one has full jurisdiction of the case. If it comes to it with an imperfect indictment, it may use its own grand jury to correct it, or do any other thing that the court from which it came could do, incident to the trial, if the case were pending there." (p. 821)
Even if this were not dictum, it is not applicable to change of venue between counties in the various states of the United States. The Southern District was the only territorial limit assigned for this part of Indian Territory. There were no smaller territorial or geographical subdivisions within the district. The places for holding court listed in the statute were villages with no specific geographic limitations or specifications. There can be no comparison of this federal case arising in Indian Territory under special federal statute with county (parish) venue changes within states where similar statutes do not exist. The reasoning in dictum in Watkins v. United States has not been applied in any court of any state in the United States. If Watkins stands for anything, it stands alone.
16 C.J. sec. 335, p. 220, published in 1918, cites State ex rel. Adams v. Grimes, 80 Wash. 14, 141 P. 184 (both cited by the majority in the instant case), as authority for its statement:
"* * * or a new complaint to be filed correcting the old one in any particular, even to allowing a change therein as to the offense charged against the defendant * * *."
State ex rel. Adams v. Grimes was a prosecution on "complaint" before a justice of the peace, charging the crime of assault in Ritzville Precinct, Adams County A "change of venue" was granted by the justice of the peace before whom the complaint was filed to another justice of the peace of the same precinct (see Hawkins' Pleas of the Crown, supra). This case merely holds that the second justice of the peace in the same precinct and county had the right to allow a new complaint to be filed "correcting the old one in any particular". How can one rely upon this justice-of-the-peace case of "recusal" as having meaning and effect on change of venue between counties or parishes within the state?
21 Am.Jur.2d, Criminal Law § 434, p. 439, is cited by the majority. The appropriate statement from that section is:
"It has been held that the court to which an indictment has been transferred on a change of venue is not divested of jurisdiction by a dismissal, nolle prosequi, or mistrial, and retains exclusive jurisdiction to try the case after a new indictment for the same offense."
This section cites Johnston v. State, 118 Ga. 310, 45 S.E. 381, 46 S.E. 488, which is certainly authority for the opinion expressed in Am.Jur.2d. Many jurisdictions hold that after dismissal or a nolle prosequi, a second indictment returned in the original county must be tried in the county to which venue was changed.
*660 The majority cites 22 C.J.S. Criminal Law § 217, p. 564, and I quote therefrom:
"* * * and, if the indictment be quashed, or a nolle prosequi entered, a new indictment may be found by a grand jury of the county to which the removal is made * * *." (p. 565)
The only authority cited in support of this statement is Kelley v. Commonwealth, 189 Ky. 778, 225 S.W. 739. Kentucky Statutes (Carroll) 1915, sec. 1117, p. 674, and Carroll's Kentucky Statutes (1922), 6 ed., sec. 1117, p. 536, and Kentucky Revised Statutes 1944, sec. 452.280 (1117), p. 2938, all contain the following language:
"* * * If the indictment is quashed or a nolle prosequi entered, a new indictment may be found, from time to time, by a grand jury of the county to which the action was removed * * *."
All of the Kentucky cases which are cited loosely throughout the commentaries as authority for many propositions are merely authority for the previous conclusion from Wharton's Criminal Law and Procedure, supra:
"* * * From a very early period many statutory exceptions to the general rule have existed."
Woods v. Commonwealth, 285 Ky. 275, 147 S.W.2d 690; Jennings v. Commonwealth, Ky., 13 Ky.Law Rep. 79, 16 S.W. 348; Parker v. Commonwealth, 12 Bush. (Ky.) 191 (1876); Gearhart v. Commonwealth, 129 Ky. 458, 112 S.W. 572, are all governed by the specific statutes cited above.
The only other authority cited by the majority is Gonzalis v. Lynch, Okl.Cr., 282 P.2d 255, 257 (1955), and this decision is actually in opposition to the view taken by the majority:
"* * * A change of jurisdiction must come by reason of the accused's application for a change of venue, after the issues are joined and the case ready for trial. It has been held that jurisdiction over the cause is one thing; the power and duty to find a new bill of indictment upon whose charges that cause shall be tried, is another and totally distinct and different thing. State v. Patterson, 73 Mo. 695. There is a dearth of authority on this question but the cases have been collected and discussed in 18 A.L.R. 706, Ex parte Lancaster, 206 Ala. 60, 89 So. 721, wherein the Alabama court said: `The removal of an indictment to another county for trial does not deprive the grand jury of the county where the crime was committed of jurisdiction to find a new indictment in case the first one is dismissed for any cause.'"
Having dealt with the "authorities" supposedly supportive of the majority opinion, I will turn now to the jurisprudence in the United States which has effect upon the question presented, directly or indirectly, by allusion or by analogy. "No person can be tried for a felony except upon an indictment preferred by the grand jury of the county in which the offense is alleged to have been committed." Ex parte Slater, 72 Mo. 102 (1880); State v. Patterson, 73 Mo. 695 (1881); State v. Billings, 140 Mo. 193, 41 S.W. 778 (1897); State v. Goddard, 162 Mo. 198, 62 S.W. 697 (1901); State ex rel. English v. Normile, 108 Mo. 121, 18 S.W. 975 (1891); State v. Bartlett, 170 Mo. 658, 71 S.W. 148, 59 L.R.A. 756. See Johnston v. State, supra; Ruffin v. State, 28 Ga.App. 40, 110 S.E. 311 (1921), allowing an indictment to be returned in the original county but holding that trial under the original county's second indictment would remain with the transferee county. See also State v. Tucker, 58 N.Dak. 82, 224 N.W. 878 (1929); State v. Woods, 24 N.D. 156, 139 N.W. 321 (1912); Keefe v. District Court of Carbon County, 16 Wyo. 381, 94 P. 459 (1908); Ex parte Lancaster, 206 Ala. 60, 89 So. 721, 18 A.L.R. 706, Annotation 714; Phillips v. Morrow, 213 Ala. 139, 104 So. 260 (1925); Ex parte Patton, 206 Ala. 700, 89 So. 924 (1921); State v. Lyts, 25 Wash. 347, 65 P. 530; 1 Bish. New Cr. Proc. *661 § 714; Stovall v. State, 97 Tex.Cr.R. 71, 260 S.W. 177 (1921).
The jurisprudence supports my contention that not merely the prevailing but the uncontradicted law is that, in the absence of statutory authority specifically to the contrary, the exclusive venue, more particularly the exclusive place, for the return of an indictment is the parish or county within which the offense occurred. There is no authority in any state which has allowed an indictment to be returned in the county to which venue has been changed, in the absence of specific statute similar to that quoted from the Kentucky Revised Statutes 1944, supra.
The final argument of the majority is that former LSA-R.S. 15:209 and 15:296 authorized the parish to which venue has been changed to indict by its own grand jury after the first indictment has been quashed. Former LSA-R.S. 15:296 stated:
"The clerk of the court to which any cause shall have been thus removed shall, on receipt of the indictment and other papers, enter the cause upon the docket of his court; and it shall be heard, tried and determined in the same manner as if the proceedings had originally been instituted therein."
The majority says:
"The code article vests the court of that parish with the authority to proceed `in the same manner as if the proceedings had originally been instituted therein'. The grant of authority is extremely broad."
The majority fails to give import to the words of limitation introducing the last clause of that articlethe words "heard, tried, and determined", which are limiting of the proceedings to be had. A grand jury indictment cannot be considered a hearing, a trial, or a determination.
The majority has misinterpreted former LSA-R.S. 15:209 by overemphasizing and unduly stressing the word "triable", and has thereby failed to perceive the true intent and purpose of the entire statute. That statute read:
"The grand jury shall inquire into all crime punishable with capital punishment and into all other crimes triable within the parish, when their attention has been been directed to the subject of such crime either by instructions from the court or at the instance of the district attorney, and the grand jury ought to find an indictment in every case submitted to them in which, in their judgment, the evidence before them, if unexplained and uncontradicted, would warrant a conviction."
The lawmakers used the word "triable" advisedly instead of using some such word as "committed" or "occurring"; for if the grand jury were given authority to inquire only into crimes "committed" or "occurring" within the parish, such a statute would conflict with the various constitutional and statutory provisions by virtue of which the grand jury may inquire into crimes committed within 100 feet of the parish border, crimes of which a substantial element occurs within the parish, crimes committed in moving vehicles, and crimes committed on bodies of water which are parish boundaries. La.Const. 1921, Art. 1, Sec. 9; former LSA-R.S. 15:15, 15:13, 15:13(B), 15:14.
Former LSA-R.S. 15:209 does not give sanction to a new determination for venue as contended by the majority.
The constitutional guarantees must be accorded their proper significance, and the statutes must be considered subservient to and only in fulfillment of them. "Grand jury", "venue", "indictment", and "trial" have deep legal and historical significance and meaning. They cannot be shallowly defined and weighed, and the courts must accord the language its orthodox and literal denotation.
I would return to my original thesis. Under the Constitutions of the United *662 States and Louisiana and under common law an indictment must be found by the grand jury of the county or parish in which the offense was committed unless there is specific statutory modification. Modifications and exceptions such as change of venue must be construed strictly and in the light of the tenor and purpose of the provision and statutes. This court has no authority to extend venue in the absence of absolute and specific statutory or legislative authority.[2] The majority holding would legislate.
If courts are permitted to take such liberties with the clear and never before questioned intendment of our Constitution in regard to indictment by grand jury, the grand jury will be eradicatedif not by our state courts, then by the federal courts. Even if grand juries are archaic, meaningless, and unnecessary (which I do not concede), their demise is for the legislature, and this court should not toll the bells for their "wake".
The indictment complained of is a nullity, and I respectively dissent.
FOURNET, Chief Justice (dissenting).
The accused, Russell Alexander, following his arraignment on an indictment returned by the grand jury of St. Martin Parish for a murder committed in that parish, secured a change of venue to St. Mary Parish, in which parish, following the quashing of the original indictment, he was reindicted, tried, and convicted. This second indictment, returned by the grand jury of a parish other than the one where the crime was committed, is illegal; consequently, all proceedings that followed are fatally defective.
While this case involves one of the most heinous and brutal crimes in the history of the state, there is, nevertheless, nothing more fundamental in our Republican form of government than the guarantee that an accused cannot be deprived of life, liberty, and property without due process of law. Amendment V of the Federal Constitution, and Section 2 of Article I of the Louisiana Constitution.
The original colonies were slow to adopt the Federal Constitution until they were assured the first ten amendments thereto would also be adopted. In these amendments, referred to as the Bill of Rights envisioned in our Declaration of Independence, it is specifically provided that "No person shall be held to answer for a capital * * * crime, unless on a presentment or indictment of a Grand Jury." Fifth amendment to the Federal Constitution. This provision is incorporated verbatim in Section 9 of Article I of the Louisiana Constitution of 1921. In this same section it is further provided that all "trials shall take place in the parish in which the offense was committed, unless the venue be changed." And there is the further stipulation in our constitution that "A grand jury of twelve * * * shall be empanelled in each parish twice in each year * * *." Section 42 of Article VII. (The emphasis has been supplied.)
The legislature, in conformity with these mandates, adopted R.S. 15:209 to provide that "The grand jury shall inquire into all crimes punishable with capital punishment, and into all other crimes triable within the parish, when their attention has been directed to the subject of such crime * * * in every case submitted to them in which, in their judgment, the evidence before them, if unexplained and uncontradicted, would warrant a conviction."
Thus it may be seen that those selected by the people to draft our constitution *663 in clear and unequivocal language, fixed the territorial limits of the courts having jurisdiction in criminal matters, assuring that no one can be legally charged with the commission of an offense except before the court within the territorial jurisdiction where the crime was committed. Neither the legislature by statute, nor this court by judicial decision, can go beyond these constitutional limits.
With all due respect to my esteemed colleagues who constitute the majority, they have overlooked the fact that a change of venue is authorized for the sole and only purpose of furnishing the accused with a speedy trial by an impartial jury, as guaranteed in the Bill of Rights of both our Federal and state constitutions, and was never intended to confer on a grand jury having no authority over the place where the crime was committed the right to reindict an accused when the indictment returned by the grand jury of the place where the crime was committed has been wiped out of existence as illegal under a defense motion to quash.
I must, therefore, respectfully dissent.
Rehearing denied.
HAMLIN, Justice (concurring in the refusal to grant a rehearing).
Because of the fears expressed in the dissenting opinions that the majority opinion in this case does violence to the jurisprudence, I deem it proper to set out the chronology of events in this matter as disclosed by the record.
August 27, 1965, Russell Alexander charged with murder on August 23, 1965 by affidavit filed August 27, 1965 and given Docket No. 13,424 of the 16th Judicial District Court for the Parish of St. Martin.
September 14, 1965, indictment returned against Alexander by the Grand Jury of the Parish of St. Martin and filed in the 16th Judicial District Court for the Parish of St. Martin under the same docket number as the affidavit, i. e., No. 13,424. In other words, the indictment followed the same course as the affidavit.
The Minutes of the 16th Judicial District Court for the Parish of St. Martin show that on Friday, October 15, 1965, the defendant withdrew his plea of "Not Guilty" so that the following pleas could be heard:
1. Motion to Quash the Indictment;
2. Change of Venue;
3. Motion and Application for Bill of Particulars;
4. Prayer for Oyer;
4[5]. Application to Determine the Accused's Mental Condition.
The Minutes further show that the motion to quash was called for hearing first. Evidence thereon was heard. "The hearing on the motion to quash was continued. The matter was submitted by the attorney for the State and the defendant."
Next, the motion for change of venue was heard and submitted.
"The Judge ruled as follows: On the motion to quash he informed the attorneys for the State and the defense that this matter would be taken under advisement.
"On the matter to change the venue, the motion was granted and this case was ordered to be tried in Franklin, St. Mary Parish, Louisiana."
The motion to determine the accused's mental condition was granted. The motions for prayer for oyer and the bill of particulars were taken under advisement.
The trial judge's reasons for his ruling on the motion for change of venue are as follows:
"This motion for a change of venue filed by the accused is based on the ground that his accusation of the crime of murder received such wide publicity in this parish that he would be unable to obtain a fair trial at the hands of its residents serving as jurors.

*664 "There is no dispute that the death involved, and the accused's involvement with it, did receive widespread publicity in the parish. The victim was a well-known lady of the white race, and a member of an old and prominent family. The accused is a Negro.
"The local newspaper carried a frontpage news article, accompanied with the accused's photograph, relating the circumstances of the alleged crime.
"The community is small, and, unavoidably, its citizens discussed the incident and the accused's alleged connection with it.
"Several of its prominent citizens testified that they did not believe that the accused could receive a fair trial at the hands of a jury drawn from the residents of the parish, as the law requires, however hard they might try to clothe the defendant with the presumption of innocence, to which he is legally entitled.
"We must readily agree with this obvious conclusion. The motion must therefore be granted.
"Accordingly, the trial of this case is ordered transferred to the Parish of St. Mary.
"Rendered in Open Court at St. Martinville, Parish of St. Martin, State of Louisiana, October 15, 1965.
"Read and signed in Open Court at Franklin, Parish of St. Mary, State of Louisiana, December 7, 1965."
On December 7, 1965, the motion to quash the indictment was granted. The motion to quash is based upon the battleweary argument of systematic exclusion of Negroes, or in the alternative, systematic inclusion of Negroes on the general venire list. The trial judge's reasons for his ruling thereon are as follows:
"Having found, in the consideration of the motion for a change of venue, that unavoidable prejudice exists in the minds of many of the residents of this parish about the probable guilt of the accused of the crime with which he is charged, it obviously follows that the community reaction probably became reflected in the minds of the Grand Jurors who returned the Indictment.
"Of course, every person charged with a crime is entitled to have the charge presented to, and considered by, an unbiased Grand Jury. We cannot conclude that this right was accorded the accused in this case.
"For these reasons, therefore, the motion to quash the Indictment must be, and is, accordingly granted, and the Indictment is accordingly quashed."
"RENDERED, READ AND SIGNED IN OPEN COURT AT Franklin, PARISH OF ST. Mary, STATE OF LOUISIANA, THIS 7th DAY OF December, 1965."
I am of the view that under the facts and circumstances of this case the reasons of the trial judge in each instance are correct.
Reason dictates that if the trial judge is reversed and another indictment is returned in St. Martin Parish, another motion to quash will be filed on the ground that the indictment is null because it will have been found by a biased and prejudiced Grand Jury. If the motion is granted, is the accused to be set free?
It is my further view that in the instant case justice demands that such a situation should not be allowed to occur. Grand Jurors and Petit Jurors are all from the same parish or community. As the trial judge correctly said, "Of course, every person charged with a crime is entitled to have the charge presented to, and considered by, an unbiased Grand Jury."
An unbiased Grand Jury acted in St. Mary Parish. If it desired, it could have returned a "No True Bill."
It is my further view that, under the exceptional circumstances of this case LSA-R.S. *665 15:209 and LSA-R.S. 15:296, in effect at the time of trial, apply.
Simply stated, the foundation of this prosecution was the filing of the affidavit in the Clerk's Office of St. Martin Parish, where it was docketed and given a docket number.
The effect of the change of venue was to transfer the affidavit and the illegal indictment, returned by a biased Grand Jury, which followed it, over to St. Mary Parish, so that proceedings could be started anew in that Parish before an unbiased Grand Jury. This was done.
Each case has a separate life of its own. The facts and circumstances of one case are not the facts and circumstances of another. Try as I will, I cannot see where the majority opinion does violence to the jurisprudence cited in the dissenting opinions.
I respectfully concur in the refusal to grant a rehearing herein.
NOTES
[1] The same trial judge presided in both St. Martin and St. Mary Parishes.
[2] The trial judge quashed the indictment on the ground the defendant had been denied his right to "an unbiased Grand Jury." The State took no appeal from this ruling. See LSA-C.Cr.P. Art. 912. Hence, it became final. We have serious doubts as to the correctness of the ruling.
[1] This case was tried before the effective date of the new Code of Criminal Procedure.
[2] State v. Montgomery, 115 La. 155, 38 So. 949 (1905), and State v. Moore, 140 La. 281, 72 So. 965 (1916), held that the State could not extend venue other than by constitutional amendment. State v. Coon, 242 La. 1019, 141 So.2d 350 (1962), is contra; see dissent by Chief Justice Fournet.